William **HUNSAKER**; Grant Bishop; Leona Bishop; Jack D. Miller; Robert Glen Chandler; Rosalie Chandler; Arthur Del Biaggio; Marian Del Biaggio; Lester Reynolds; Shirley Reynolds; Martin Marks; Florence Marks; Stephen Brudney; Pamela Beckman; Linda Bettiga; Robert Halvorsen; Karolyn Halvorsen; Norma Lorraine Waters; and Joseph Wright, and individuals, on behalf of themselves and all others similarly situated,, Plaintiffs–Appellants,

---

v.

Charles HURWITZ; Pacific Lumber Co.; Maxxam Group, Inc.; MXM Corporation; Federated Development Company, Defendants–Appellees.

No. 99–15883.

D.C. No. CV–98–04515–CW.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 13, 2001.

Decided July 9, 2001.

Before GOODWIN, HUG, and W. FLETCHER, Circuit Judges.

## MEMORANDUM *

Plaintiffs appeal the district court's order under Rule 12(b)(6) dismissing their claims with prejudice. We affirm.

### I

Pacific Lumber Corporation[1] was a Maine corporation that was targeted for a leveraged buyout by Charles Hurwitz, Maxxam, Inc., and related entities in 1985. Plaintiffs in this case contend that the purchasers used an illegal "stock parking" scheme to prevent Pacific Lumber Maine's

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

1. Prior to its takeover, Pacific Lumber Company was a Maine corporation. After the takeover, it became a Delaware corporation. In this disposition, "Pacific Lumber Maine"

Board of Directors ("the Board") from fighting the buyout attempt, and to avoid anti-takeover provisions in the company's Articles of Incorporation. The Board rejected an initial tender offer and adopted amendments to the company retirement plan requiring the pension plan surplus to vest immediately in its employees and retirees in the event of an "unapproved change in control." But soon afterwards, the Board agreed to a merger after Maxxam offered a higher price per share. Plaintiffs allege that the Board's consent was invalid because of the purchasers' illegal tactics, and because of a conflict of interest on the part of one of the Board's financial advisors. Plaintiffs contend that under the pre-takeover amendments to the pension plan, they are entitled to recover the pension plan surplus, a sum of $60 million.

Approximately one year after the takeover, several individuals filed a class action on behalf of Pacific Lumber shareholders in California state court, in an action known as *Thompson v. Elam.* The named *Thompson* plaintiffs, none of whom are named plaintiffs in the instant case, named among their defendants Charles Hurwitz, Maxxam Group, Inc., MXM Corp., and Federated Development Company ("the Maxxam defendants"), and Pacific Lumber Maine. In their second and third amended complaints, the *Thompson* plaintiffs included the pension claims that the *Hunsaker* plaintiffs now assert before this court. Shortly after the third amended complaint was filed, both plaintiffs and defendants in *Thompson* asked the state court to stay the action pending the resolution of related litigation in *In re Ivan F. Boesky Securities Litigation.* They entered into successive stipulations agreeing to stay the action, and the stay period

lasted over seven years, until March 18, 1997.

When the state court first granted the stay, several of the *Thompson* defendants had not yet been served with process. All three stay stipulations contained language that preserved the rights of these defendants. The stipulations provided, for example, that they did not "diminish, enhance, or otherwise affect in any way any rights or defenses which any ... defendant may have against any plaintiff," that the execution of the stipulations did "not constitute an appearance or waiver of any defects of service," and that although "the five year statute set forth in section 588.310 [sic [2]]," would be tolled during the period specified in the stipulation, tolling would only have effect for "those defendants who have been properly and timely served." Plaintiffs in this case concede that the Maxxam defendants were not served during the *Thompson* litigation.

The state court lifted its stay in 1997. It dismissed without prejudice the claims against Hurwitz, Pacific Lumber Company, Maxxam Group, Inc., and MXM Corp. on May 5, 1998 because the *Thompson* plaintiffs had not served them with process within the time required by California law. *See* Cal.Code Civ. Proc. §§ 583.210, 583.250. At the time it dismissed these defendants, the state court had never formally certified the plaintiff class. Six months later, plaintiffs in this case filed their class action complaint in federal district court. They named five defendants: Charles Hurwitz; Pacific Lumber Delaware; Maxxam Group, Inc.; MXM Corp.; and Federated Development Company. With the exception of Federated Development Company, each of these defendants had been dismissed from the *Thompson* class action by the state court's May 5,

---

refers to the pre-takeover corporation and "Pacific Lumber Delaware" refers to the post-takeover corporation.

**2.** The parties may have intended to refer to Cal.Code Civ. Proc. § 583.310.

1998 order. The *Thompson* plaintiffs had dropped Federated from their lawsuit after filing their first amended complaint.

The named *Hunsaker* plaintiffs had not been named plaintiffs in *Thompson,* but claimed that they had been putative class members in that case. They pled four causes of action, three under state law and one under federal law. Although they conceded that statutes of limitations for all of these claims had expired, the *Hunsaker* plaintiffs contended that the stay issued in *Thompson* tolled the statutes of limitations on their claims, or, alternatively, that the pendency of *Thompson* tolled those statutes under the rule of *American Pipe and Construction Co. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974).

The district court disagreed. It first held that under the terms of the stipulations in *Thompson,* the statute of limitations was not tolled with respect to the Maxxam defendants because they had never been served. The district court then held that the equitable tolling doctrine set out in *American Pipe* was inapplicable because of the failure of the named *Thompson* plaintiffs to serve the Maxxam defendants. The district court dismissed plaintiffs' claims against the Maxxam defendants with prejudice. Plaintiffs timely appeal, and we affirm.

## II

■ Dismissal under Rule 12(b)(6) for failure to state a claim is appropriate if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). We review such dismissals *de novo. Burgert v. Lokelani Bernice Pauahi Bishop Trust,* 200 F.3d 661, 663 (9th Cir.2000).

■ On appeal, plaintiffs contend that the district court erred in refusing to apply *American Pipe* to toll the applicable statutes of limitation in this case. In *American Pipe,* the Supreme Court allowed unnamed members of a class to intervene as individual plaintiffs in a class action after the district court had refused class certification even though the statutes of limitations on the intervening plaintiffs' claims had expired during the pendency of the class action. It held that "the commencement of [a] class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Id.* at 554, 94 S.Ct. 756.

The Supreme Court extended *American Pipe* in *Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983), where it held that *American Pipe* applied not only to parties who sought to intervene after denial of class certification, but also to parties who sought to file an entirely new action. *Id.* at 353–54, 103 S.Ct. 2392. The Ninth Circuit has further extended *American Pipe* to cover certain situations where plaintiffs seek to bring a new class action rather than a new individual action. *See Catholic Social Services, Inc. v. Reno,* 232 F.3d 1139, 1149 (9th Cir.2000) (en banc).

Appellants contend that even though the *Thompson* plaintiffs never served the defendants in this case, the statutes of limitations on the causes of actions asserted by the *Thompson* plaintiffs are tolled under *American Pipe* for plaintiffs in this case. We disagree. *American Pipe* and *Crown, Cork & Seal* dealt with situations in which unnamed class members sought to litigate their own claims after a court refused to certify a class in an action instituted on their behalf. *Catholic Social Services* dealt with a situation in which intervening legislation required the class to amend its complaint. None of these cases allowed unnamed class members to escape the consequences of a failure by the class repre-

**830**

sentatives to serve process in the initial action. None even remotely suggests that if a defendant in a class action is never served with process, the statutes of limitations on claims against that defendant are nevertheless tolled for all unnamed class members during the pendency of the action against defendants who have been served.

■ The failure of the *Thompson* plaintiffs to serve the defendants in this case prevents the statutes of limitations on plaintiffs' claims from being tolled under *American Pipe.* A plaintiff cannot rely on the doctrine of *American Pipe* to "piggyback one class action onto another," *Salazar–Calderon v. Presidio Valley Farmers Ass'n,* 765 F.3d 1334, 1351 (5th Cir.1985), in order "to correct a procedural deficiency in an earlier would-be class." *Catholic Social Services,* 232 F.3d at 1149. We therefore affirm the decision of the district court.

AFFIRMED.