Stephen D. AHO, individually, and on behalf of all others similarly situated, Plaintiff,

v.

**AMERICREDIT FINANCIAL SERVICES, INC. dba ACF Financial Services, Inc., Defendant.**

**No. 10cv1373 DMS (BLM).**

United States District Court,
S.D. California.

Nov. 8, 2011.

---

612

John W. Hanson, The Hanson Law Firm, Michael E. Lindsey, Law Offices of Michael E. Lindsey, San Diego, CA, for Plaintiff.

Peter Scott Hecker, Sheppard Mullin Richter & Hampton, San Francisco, CA, Shannon Z. Petersen, Sheppard Mullin Richter and Hampton, San Diego, CA, for Defendant.

*SECOND AMENDED ORDER (1) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL AND (2) DENYING AS MOOT DEFENDANT'S MOTION TO EXCLUDE PUTATIVE CLASS MEMBERS WITH ARBITRATION CLAUSES*

DANA M. SABRAW, District Judge.

This matter has been fully briefed and comes before the Court on Plaintiff's motion for class certification and appointment of class counsel. John Hanson and Michael Lindsey appeared and argued on behalf of Plaintiff, and Peter Hecker, Anna McLean and Shannon Peterson appeared and argued on behalf of Defendant AmeriCredit Financial Services, Inc. After the Court issued its order on the motion, Defendant filed a motion for reconsideration on Plaintiff's request for statutory damages under the Rosenthal Act, and the parties submitted supplemental briefing on the numerosity requirement. Having carefully considered all of the pleadings and arguments of counsel, the Court now amends its previous order as follows:

## I.

## BACKGROUND

On December 14, 2003, Plaintiff Steven Aho entered into a Retail Installment Sales Contract ("RISC") with Rancho Chrysler Jeep Dodge for the financing and purchase of a 2002 Dodge Dakota truck. (Decl. of Stephen D. Aho in Supp. of Mot. for Class Cert. ("Aho Decl."), Ex. 1.) Pursuant to the RISC, Plaintiff was to make monthly payments on the loan beginning in January 2004. (*Id.*)

Plaintiff's truck was repossessed on August 13, 2005, after he failed to make the monthly payments required by the RISC. On August 15, 2005, Defendant AmeriCredit Financial Services, Inc. sent Plaintiff a "Notice of Our Plan to Sell Property" ("NOI"). (Aho Decl., Ex. 2.) The NOI informed Plaintiff that the truck would be sold, and the proceeds from the sale would be used to pay the outstanding balance. (*Id.*) It also informed Plaintiff that he would be responsible for any balance remaining if the sale proceeds did not cover the entire outstanding amount. (*Id.*)

On September 15, 2005, Plaintiff's truck was sold at a private sale. (Aho Decl., Ex. 3.) On September 27, 2005, Defendant sent Plaintiff a "Deficiency Calculation," which listed a deficiency in the amount of $9,212.48. (*Id.*) Over the next three years, Defendant attempted to collect this deficiency from Plaintiff, and reported the deficiency to various credit reporting agencies. Plaintiff did not make any payments toward the deficiency until June 14, 2010, at which time he made a $25 payment.

Thereafter, Plaintiff filed the present action. He alleges three claims: (1) for violation of "the California Fair Debt Collection Practices Act" or "the Rosenthal Act" (Cal. Civ.Code § 1788, *et seq.*); (2) for violation of California's Unfair Competition Law ("UCL"; Bus. & Prof.Code § 17200, *et seq.*); and (3) for declaratory relief. Plaintiff's theories are that Defendant's collection activities violated the Rosenthal Act, and Defendant's NOI failed to comply with California's Rees–Levering Automobile Sales Finance Act ("ASFA"; Cal. Civ.Code § 2981, *et seq.*)

Specifically, Plaintiff claims the NOI failed to comply with Section 2983.2(a)(2) of the ASFA, because the NOI did not inform him of "all the conditions precedent" to reinstating his RISC.[1] Citing *Juarez v. Arcadia Financial, Ltd.*, 152 Cal.App.4th 889, 912, 61 Cal.Rptr.3d 382 (2007), a case that interpreted the statute's "conditions precedent" language, Plaintiff asserts the NOI

---

1. Cal. Civ.Code § 2983.2(a)(2) provides, in pertinent part, that a purchaser shall not be liable for a deficiency following repossession unless the NOI "[s]tates ... that there is a conditional right

to reinstate the contract until the expiration of 15 days from the date of giving or mailing the notice and all the conditions precedent thereto...." Cal. Civ.Code § 2983.2(a)(2).

must "inform the consumer of any amounts the consumer will have to pay to reinstate a contract [and] inform the consumer if, when and by how much those amounts may increase as a result of late fees and other charges." The subject NOI, according to Plaintiff, informs him of only a "partial dollar amount" to reinstate, followed by other vague language: "Plus any storage charges, additional payments, and late charges that come due after the date of this notice." The NOI did not inform Plaintiff of the specific amounts and dates of the "plus payments" that came due between the date of the NOI and the expiration of the reinstatement period. Nor did it tell him how much, or to whom, he would have to pay storage charges, late charges, and government fees.

Because the NOI fails to set forth the conditions precedent to reinstatement as required by Section 2983.2(a)(2) of the ASFA, Plaintiff claims Defendant failed to create a valid debt and is barred from collecting a deficiency. Plaintiff further claims that as a result of the disclosure violation he is entitled to remedies provided by statute, including statutory damages and restitution, citing *Lewis v. Robinson Ford Sales, Inc.*, 156 Cal. App.4th 359, 365 n. 4, 67 Cal.Rptr.3d 347 (2007) (" 'conditional sale contract shall not be enforceable' " where disclosure requirements of ASFA are violated). *See also* Cal. Civ.Code § 2983 (providing restitution for statutory violation). Finally, Plaintiff claims that because the same (defective) standard-form NOI was used with all class members, the statutory violation is readily determinable by common proof on a classwide basis.

## II.

## DISCUSSION

Plaintiff moves to certify a class consisting of:

All persons who were sent an NOI by AmeriCredit to an address in California at any time from March 18, 2005 through May 15, 2009, following the repossession or voluntary surrender of a motor vehicle, who were assessed a deficiency balance following the disposition of the vehicle, and against whom AmeriCredit has asserted, collected, or attempted to collect any portion of the deficiency balance. The class excludes persons whose obligations have been discharged in bankruptcy, persons against whom AmeriCredit has obtained final judgments in replevin actions, and persons who received NOIs that denied them the right to reinstate.

(Mem. of P. & A. in Supp. of Mot. for Class Cert. at 4.) Plaintiff asserts the proposed class satisfies the requirements of Federal Rules of Civil Procedure 23(a), 23(b)(2) and 23(b)(3). Defendant questions whether Plaintiff's claims are typical of the claims of absent class members and whether Plaintiff and his counsel are adequate representatives for the class. Defendant also contests that Plaintiff has met the requirements of Rules 23(b)(2) and 23(b)(3).

### A. Legal Standard

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.' " *Wal–Mart Stores, Inc. v. Dukes*, —— U.S. ——, 131 S.Ct. 2541, 2550, 180 L.Ed.2d 374 (2011) (citing *Califano v. Yamasaki*, 442 U.S. 682, 700–01, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979)). To qualify for the exception to individual litigation, the party seeking class certification must provide facts sufficient to satisfy the requirements of Federal Rules of Civil Procedure 23(a) and (b). *Doninger v. Pacific Northwest Bell, Inc.*, 564 F.2d 1304, 1308–09 (9th Cir.1977).

Federal Rule of Civil Procedure 23(a) sets out four requirements for class certification—numerosity, commonality, typicality, and adequacy of representation.[2] A showing that these requirements are met, however, does not warrant class certification. Plaintiff also must show that one of the requirements

---

**2.** Fed.R.Civ.P. 23(a) provides: "One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a).

of Rule 23(b) is met. Here, Plaintiff asserts that the requirements of both Rule 23(b)(2) and (b)(3) are met.

Rule 23(b)(2) allows class treatment when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R.Civ.P. 23(b)(2). Because the relief requested in a (b)(2) class is prophylactic, enures to the benefit of each class member, and is based on accused conduct that applies uniformly to the class, notice to absent class members and an opportunity to opt out of the class is not required. *See Dukes,* 131 S.Ct. at 2558 (noting relief sought in a (b)(2) class "perforce affect[s] the entire class at once" and thus, the class is "mandatory" with no opportunity to opt out).

In contrast, Rule 23(b)(3) applies to situations "in which class-action treatment is not as clearly called for," as in a (b)(2) class. *Id.* (quoting *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)). Rule 23(b)(3) "allows class certification in a much wider set of circumstances but with greater procedural protections," (*id.*), including that: (a) "questions of fact or law common to class members predominate over questions affecting only individual members," (b) class treatment is determined to be superior to other methods of adjudicating the controversy, and (c) class members receive " 'the best notice that is practicable under the circumstances' " and are allowed to "withdraw from the class at their option." *Id.* (citing Fed.R.Civ.P. 23(c)(2)(B)).[3]

The district court must conduct a rigorous analysis to determine whether the prerequisites of Rule 23 have been met. *Gen. Tel. Co. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). It is a well-recognized precept that "the class determina-tion generally involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action.' " *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 469, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978) (quoting *Mercantile Nat'l Bank v. Langdeau,* 371 U.S. 555, 558, 83 S.Ct. 520, 9 L.Ed.2d 523 (1963)). However, "[a]lthough some inquiry into the substance of a case may be necessary to ascertain satisfaction of the commonality and typicality requirements of Rule 23(a), it is improper to advance a decision on the merits at the class certification stage." *Moore v. Hughes Helicopters, Inc.,* 708 F.2d 475, 480 (9th Cir.1983) (citation omitted); *see also Nelson v. United States Steel Corp.,* 709 F.2d 675, 679–80 (11th Cir.1983) (plaintiff's burden "entails more than the simple assertion of [commonality and typicality] but less than a prima facie showing of liability") (citation omitted). Rather, the court's review of the merits should be limited to those aspects relevant to making the certification decision on an informed basis. *See* Fed.R.Civ.P. 23 advisory committee notes. If a court is not fully satisfied that the requirements of Rules 23(a) and (b) have been met, certification should be refused. *Falcon,* 457 U.S. at 161, 102 S.Ct. 2364.

## B. Rule 23(a)

Rule 23(a), and its prerequisites for class certification—numerosity, commonality, typicality, and adequacy of representation—are addressed in turn.

### 1. Numerosity

Rule 23(a)(1) requires the class to be "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1); *Staton v. Boeing Co.,* 327 F.3d 938, 953 (9th Cir.2003). The plaintiff need not state the exact number of potential class members; nor is a specific minimum number required. *Arnold v. United Artists Theatre Circuit,*

---

**3.** Rule 23(b)(3) requires the court to find: "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include: (A) the class members' interest in individ-ually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed.R.Civ.P. 23(b)(3).

*Inc.,* 158 F.R.D. 439, 448 (N.D.Cal.1994). Rather, whether joinder is impracticable depends on the facts and circumstances of each case. *Id.*

Here, Plaintiff states, and Defendant does not dispute, that there are more than 93,035 potential class members. In a companion motion, Defendant moved to exclude putative class members who agreed to arbitrate their claims against Defendant. Approximately 60% of the potential class members would be affected, according to Defendant. Assuming Defendant's 60% estimate is accurate, the class would still consist of approximately 37,-000 members, which would satisfy the numerosity requirement. Accordingly, Plaintiff has satisfied the first requirement of Rule 23(a).

### 2. Commonality

▮ The second element of Rule 23(a) requires the existence of "questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). This requirement is met through the existence of a "common contention" that is of "such a nature that it is capable of classwide resolution[.]" *Dukes,* 131 S.Ct. at 2551. As summarized by the Supreme Court:

> What matters to class certification ... is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

*Id.* (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof,* 84 N.Y.U. L.Rev. 97, 132 (2009)).

In this case, there are discrete factual and legal issues common to the proposed class that, when answered, are dispositive of the entire litigation. Factually, Plaintiff states Defendant sent a defective standard-form NOI to all class members, and Defendant has uniformly asserted deficiency balances against class members. (*See* Pl.'s Supp. Br. in Supp. of Mot. for Class Cert. at 5.) Legally, Plaintiff states each class member's claim is the same, namely, that the NOI fails to comply with ASFA disclosure requirements, and thus, Defendant has failed to create a valid debt and is barred from collecting any deficiency. These issues meet the standard of commonality, as their resolution will generate common answers apt to drive resolution of the litigation.

### 3. Typicality

▮ The next requirement of Rule 23(a) is typicality, which focuses on the relationship of facts and issues between the class and its representatives. "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir.1998). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir.1992) (citation and internal quotation marks omitted).

Here, Plaintiff asserts the facts underlying his claim are typical of the facts underlying the claims of all members of the proposed class. Specifically, Plaintiff defaulted on a car loan and had his car repossessed. AmeriCredit then sent a defective standard-form NOI to Plaintiff (and all class members) explaining how he could redeem his vehicle or reinstate his loan. The NOI also informed Plaintiff that if he did not reinstate or redeem, the vehicle would be sold and Plaintiff would be liable for any deficiency. Plaintiff did not reinstate or redeem, his vehicle was sold, and AmeriCredit asserted the deficiency against Plaintiff.

Defendant argues Plaintiff's claim is not typical of the claims of members of the proposed class because Plaintiff cannot show the NOI or Defendant's collection efforts caused Plaintiff any harm. (Opp'n to Mot. for Class Cert. at 16–17.) Specifically, Defendant asserts Plaintiff cannot show Defendant's conduct caused Plaintiff to make the $25 deficiency payment or resulted in Plaintiff's loss of employment. This argument, however,

does not address whether Plaintiff's claim is typical of the claims of absent class members. Rather, the argument attacks the merits of Plaintiff's individual claim. Moreover, Defendant's argument does not address the other common injury alleged in this case, *i.e.,* that class members are subjected to an invalid debt caused by AmeriCredit's defective NOI and assertion of a deficiency.

Defendant also argues Plaintiff's claims are not typical of those members of the proposed class whose RISCs contain arbitration clauses. On this issue, the Court agrees with Defendant. In an effort to cure this problem, Plaintiff proposes that the Court redefine the proposed class to exclude individuals whose RISCs include an arbitration clause. With this adjustment to the class definition, Plaintiff has met the typicality requirement.[4]

#### 4. Adequacy of Representation

The final requirement of Rule 23(a) is adequacy. Rule 23(a)(4) requires a showing that "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). This requirement is grounded in constitutional due process concerns; "absent class members must be afforded adequate representation before entry of judgment which binds them." *Hanlon,* 150 F.3d at 1020 (citing *Hansberry v. Lee,* 311 U.S. 32, 42–43, 61 S.Ct. 115, 85 L.Ed. 22 (1940)). In reviewing this issue, courts must resolve two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Id.* (citing *Lerwill v. Inflight Motion Pictures, Inc.,* 582 F.2d 507, 512 (9th Cir.1978)). The named plaintiffs and their counsel must have sufficient "zeal and competence" to protect the interests of the rest of the class. *Fendler v. Westgate–California Corp.,* 527 F.2d 1168, 1170 (9th Cir.1975).

Plaintiff has demonstrated the absence of any conflict between himself and his counsel

and the members of the proposed class. He has also demonstrated that he and his counsel will vigorously prosecute the case on behalf of the class. Nevertheless, Defendant argues Plaintiff is not an adequate class representative because he lacks standing, his claim is time-barred and his credibility is lacking. For the reasons set out in the Court's order on Defendant's motion for summary judgment, the Court rejects Defendant's first two arguments. Defendant's latter argument is relevant to the adequacy analysis, but is not determinative. *See Harris v. Vector Marketing Corp.,* 753 F.Supp.2d 996, 1015 (N.D.Cal.2010) (stating credibility is relevant to adequacy but does not automatically render proposed representative inadequate). Although Defendant has pointed out some inconsistencies in Plaintiff's testimony, those inconsistencies are not " 'so sharp as to jeopardize the interests of absent class members[,]' " thereby rendering Plaintiff an inadequate class representative. *Id.* (quoting *Lapin v. Goldman Sachs & Co.,* 254 F.R.D. 168, 177 (S.D.N.Y.2008)). Defendant's arguments about Plaintiff's counsel are similarly unpersuasive. Accordingly, Plaintiff has satisfied Rule 23(a)(4).

### C. Rule 23(b)

Having satisfied the requirements of Rule 23(a), the next issue is whether Plaintiff has shown that at least one of the requirements of Rule 23(b) is met. *Amchem,* 521 U.S. at 614–15, 117 S.Ct. 2231. Plaintiff asserts he has met the prerequisites of certification for both a (b)(2) and (b)(3) class. Each proposed class is addressed in turn.

#### 1. Rule 23(b)(2)

Under Rule 23(b)(2), class certification may be appropriate where a defendant acted or refused to act in a manner applicable to the class generally, rendering injunctive and declaratory relief appropriate to the class as a whole. Until recently, the Ninth Circuit permitted certification of claims for damages, including restitution, under Rule 23(b)(2) if the injunctive or declaratory relief

---

4. The Court therefore denies as moot Defendant's companion motion to exclude putative class members with arbitration clauses.

sought predominated over any monetary relief sought. The parties focused on the predominance test in their briefs, but shortly after argument in this case the Supreme Court rejected that test and held that "individualized monetary claims belong in Rule 23(b)(3)." *Dukes,* 131 S.Ct. at 2558. The Supreme Court reasoned:

> The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.' (Citation omitted.) In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant. Similarly, it does not authorize class certification when each class member would be entitled to an individualized award of monetary damages.

*Dukes,* 131 S.Ct. at 2557.

Notably, however, the Supreme Court indicated—but did not decide—that claims for monetary relief may be certified under Rule 23(b)(2) if such relief is "incidental" to the injunctive or declaratory relief sought. *Id.* at 2560 ("We need not decide whether there are any forms of 'incidental' monetary relief that are consistent with the interpretation of Rule 23(b)(2) we have announced and that comply with the Due Process Clause.")

Here, Plaintiff for himself, and on behalf of the class, is seeking statutory damages under the Rosenthal Act and restitution of all amounts paid toward the deficiencies. However, neither form of relief is incidental to the declaratory and injunctive relief sought.

Title 15 U.S.C. § 1692k, a provision of the Fair Debt Collection Practices Act ("FDCPA"), applies to Plaintiff's claim under the Rosenthal Act by virtue of California Civil Code § 1788.17.[5] *See Gonzales v. Arrow Financial Services, LLC,* 660 F.3d 1055, 1065

(9th Cir.2011) (stating this statute "unambiguously supercedes any provision of the Rosenthal Act inconsistent with the referenced provisions of the FDCPA"); *Sullivan v. American Express Publishing Corp.,* No. SACV 09–142–JST (Anx), 2011 WL 2600702, at *7 (C.D.Cal. June 30, 2011) (stating statutory damages for class action under Rosenthal Act are capped at $500,000 pursuant to 15 U.S.C. § 1692k). This statute provides that for class action claims, the plaintiffs may recover, in addition to actual damages:

> (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector[.]

15 U.S.C. § 1692k(a)(2)(B). In determining whether and how much, if any, to award under this section in a class action, the statute sets out the following factors: "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, the resources of the debt collector, the number of persons adversely affected, and the extent to which the debt collector's noncompliance was intentional." 15 U.S.C. § 1692k(b)(2). Under the plain language of the statute, statutory damages are subject to the court's discretion considering the factors listed above. *Irwin v. Mascott,* 112 F.Supp.2d 937, 946 (N.D.Cal. 2000). Plaintiff has failed to demonstrate that any award of statutory damages would flow directly from liability to the class as a whole without the need for resolution of substantial factual issues or individualized determinations. *See Dukes,* 131 S.Ct. at 2560 (quoting *Allison v. Citgo Petroleum Corp.,* 151 F.3d 402, 415 (5th Cir.1998)) (damages may be incidental if they " 'flow directly from liability to the class as a *whole* on the claims forming the basis of the injunctive or declaratory relief' " and do not " 'introduce new substantial legal or fac-

5. This statute provides: "Notwithstanding any other provision of this title, every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of Sections 1692b to 1692j, inclusive, of, and shall be subject to the remedies in Section 1692k of, Title 15 of the United States Code." Cal. Civ.Code § 1788.17.

tual issues, nor entail complex individualized determinations.'") Under these circumstances, Plaintiff's request for damages under the referenced statutory scheme is not incidental to the declaratory and injunctive relief sought, and is therefore inappropriate for certification under Rule 23(b)(2).

In addition, the restitutionary relief sought by the class is not incidental to the injunctive and declaratory relief, as each class member who paid a deficiency paid a different sum, and thus would be entitled to an "individualized award." *Dukes*, 131 S.Ct. at 2557. While such relief would follow automatically if liability is proven by the class and individualized proof would be required only as to the *amount* of the individual award, certification is nevertheless appropriately sought under Rule 23(b)(3) and not under Rule 23(b)(2). Given that the restitution sought here approximates $4 million and will vary from class member to class member, and some individual relief may involve significant sums, these absent class members ought to be provided notice and an opportunity to withdraw from the class to pursue these and other potential damages and claims against Defendant on an individual basis if they so desire.

Plaintiff has proposed in the alternative that the Court create a subclass consisting of all those who made a payment toward a deficiency, thereby carving out the restitutionary relief sought from the injunctive and declaratory relief. (Pl.'s Supp. Br. in Supp. of Mot. for Class Cert. at 4 n. 1.) Plaintiff also requests in the alternative that his request for statutory damages under the Rosenthal Act be certified under Rule 23(b)(3). Those requests are addressed below under Rule 23(b)(3).

■ With the carve out of statutory and restitutionary damages, the class is appropriately certified under Rule 23(b)(2). Plaintiff seeks declaratory and injunctive relief on behalf of the class under the "unlawful" prong of California's UCL. Cal. Bus. & Prof.Code § 17200, *et seq.* Plaintiff employs the ASFA, and Defendant's violation of its disclosure requirements, as a predicate for the unlawful act requirement under the UCL. If the NOI fails ASFA's disclosure requirements, Plaintiff argues the deficiency balances ought to be declared invalid and any collection activities enjoined. Plaintiff's legal theory, which finds support in California case law, is that a violation of ASFA's mandatory disclosure requirements renders sellers strictly liable. *See Lewis*, 156 Cal.App.4th at 370, 67 Cal.Rptr.3d 347 (mandatory disclosures required by the ASFA are analogous to a strict liability provision, and individualized proof of reliance by or financial harm to the customer is not required). The core factual issues under this theory are whether Defendant's form NOI used during the class period satisfies the disclosure requirements of the ASFA, and whether Defendant asserted a deficiency against class members. These issues can be determined by examining the face of the NOIs. Similarly, whether Defendant initiated collection efforts against class members can be readily determined from the discovery.[6] Excluding Plaintiff's request for restitution and statutory damages, the declaratory and injunctive relief sought stems from Defendant's conduct against the class generally and the relief, if granted, would be appropriate to the class as a whole.

### 2. Rule 23(b)(3)

■ With certification of the class specified above, the Court next considers whether Plaintiff has met the requirements of Rule 23(b)(3) for the subclass consisting of all those who made a payment toward a deficiency and seek restitution, as well as Plaintiff's request for statutory damages under the Rosenthal Act. Certification under Rule 23(b)(3) is proper "whenever the actual interests of the parties can be served best by settling their differences in a single action." *Hanlon*, 150 F.3d at 1022 (internal quotations omitted). Rule 23(b)(3), as discussed, calls for two separate inquiries: (1) do issues common to the class "predominate" over is-

---

6. Plaintiff asserts Defendant "automatically" reported every class member to credit bureaus. (Pl.'s Supp. Br. in Supp. of Mot. for Class Cert. at 5.) Plaintiff also claims Defendant uniformly attempted collection from class members through demand letters and telephone calls. (*See* Decl. of Michael Lindsey in Supp. of Mot. for Class Cert. ("Lindsey Decl."), Ex. 9 (Dep. of Craig Paterson, at 9–21)).

sues unique to individual class members, and (2) is the proposed class action "superior" to the other methods available for adjudicating the controversy. Fed.R.Civ.P. 23(b)(3). In adding these requirements to the qualifications for class certification, "the Advisory Committee sought to cover cases 'in which a class action would achieve economies of time, effort, and expense, and promote ... uniformity of decisions as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Amchem*, 521 U.S. at 615, 117 S.Ct. 2231 (quoting Fed.R.Civ.P. 23(b)(3)(advisory committee notes)).

#### a. Predominance

A "central concern of the Rule 23(b)(3) predominance test is whether 'adjudication of common issues will help achieve judicial economy.'" *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir.2009) (quoting *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir.2001)). Thus, courts must determine whether common issues constitute such a significant aspect of the action that "there is a clear justification for handling the dispute on a representative rather than on an individual basis." 7A Charles Alan Wright, *et al., Federal Practice and Procedure* § 1778 (3d ed. 2005). To satisfy the predominance inquiry, it is not enough simply to establish that a common question of law or fact exists, as it is under Rule 23(a)(2)'s commonality requirement. The predominance inquiry under Rule 23(b) is more rigorous, *Amchem*, 521 U.S. at 624, 117 S.Ct. 2231, as it "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* at 623, 117 S.Ct. 2231.

#### i. Statutory Damages Under the Rosenthal Act

Absent certification of statutory damages under the Rosenthal Act pursuant to Rule 23(b)(2), Plaintiff requests that the Court certify class treatment of these damages under Rule 23(b)(3). To warrant class certification under this Rule, Plaintiff must demonstrate that the request for statutory damages satisfies the predominance require-

ment. Plaintiff asserts this requirement is met because Defendant engaged in "a uniform practice for collections." (Opp'n to Mot. for Reconsideration at 5.) Defendant contends Plaintiff has failed to produce any evidence to support this assertion, but the record does contain some evidence that Defendant's collection efforts were uniform. (*See* Lindsey Decl., Ex. 9 (Depo. of Craig Paterson, at 9:4–17)) (explaining Defendant's procedure to "actively call the account to try to collect the deficiency balance" 45 days after sale of the repossessed vehicle and to "start a letter process, as well," in which there was a scheduled sequence for sending "certain letters ... at a certain time...."). Plaintiff, however, provides no evidence as to the number, timing and content of the telephone calls, or the number and timing of the letters, let alone that a standard collection practice was used as to all class members. The general description of collection activities provided by Mr. Paterson is insufficient. For example, Plaintiff has not come forward with sufficient common evidence addressing the relevant statutory factors, such as the frequency and persistence of Defendants' noncompliant debt collection activities, the specific nature of such noncompliance, and whether the noncompliance was intentional, among other factors. *See* 15 U.S.C. § 1692k(a)(2)(B). For these reasons, the Court finds Plaintiff has not established that common evidence predominates with respect to the statutory damages claim.

Defendant also argues it did not engage in any class-wide collection efforts in the year before this case was filed, thereby defeating a finding of predominance on this separate ground as well. In support of this argument, Defendant relies on Mr. Paterson's testimony wherein he states that Defendant stopped sending collection letters and making collection calls to its California customers in May 2009. (Lindsey Decl., Ex. 9 at 13–14.) Defendant concedes "there were isolated instances where this policy was not followed," (Decl. of Craig Paterson in Opp'n to Mot. for Class Cert. ¶ 3), but it argues those isolated instances are insufficient to warrant class certification on the Rosenthal Act claim.

Notably, Plaintiff does not dispute that Defendant did not engage in class-wide collection efforts within the year preceding the filing of this case, and he fails to provide any evidence of such conduct. Instead, he relies on the continuing violations and tolling doctrines to sweep Defendant's more remote conduct into this case.

▬▬▬ The continuing violations doctrine "permits recovery 'for actions that take place outside the limitations period if these actions are sufficiently linked to unlawful conduct within the limitations period[.]'" *Komarova v. National Credit Acceptance, Inc.*, 175 Cal.App.4th 324, 343, 95 Cal.Rptr.3d 880 (2009) (quoting *Richards v. CH2M Hill, Inc.*, 26 Cal.4th 798, 812, 111 Cal.Rptr.2d 87, 29 P.3d 175 (2001)). The key to the continuing violations doctrine "'is whether the conduct complained of constitutes a continuing pattern and course of conduct as opposed to unrelated discrete acts.'" *Id.* (quoting *Joseph v. J.J. Mac Intyre Companies, L.L.C.*, 281 F.Supp.2d 1156, 1161 (N.D.Cal.2003)). Here, Defendant ceased its uniform collection efforts against its California customers, including Mr. Aho, in May 2009. Plaintiff asserts Defendant's collection activity continued through the filing of the present case on June 29, 2010, and in support of that assertion he cites Defendant's phone logs with Plaintiff, which run through June 24, 2010. (*See* Decl. of Michael Lindsey in Opp'n to Mot. to Exclude Pre Juarez Notices, Ex. 1.) The activity on that log, however, does not constitute a continuation of Defendant's collection practices. Rather, the log reflects Defendant did not initiate any collection at-

tempts against Plaintiff between May 2009 and May 13, 2010. On May 13, 2010, the log reflects that a female called Defendant about settling Plaintiff's account. Over the next month, the parties continued to discuss Plaintiff's account, but those discussions were not part of a "continuing pattern and course of conduct." On the contrary, those discussions appear to have been discrete acts directed solely at Plaintiff, and prompted by *Plaintiff's* conduct, not Defendant. Under these circumstances, the continuing violation doctrine does not assist Plaintiff in meeting the predominance requirement.

Plaintiff's reliance on tolling is, likewise, unavailing.[7] The parties do not dispute that the statute of limitations for an individual action may be tolled by the filing of an earlier class action. *See Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983); *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). In this case, Plaintiff relies on *Smith v. Americredit*[8] to toll the statute of limitations on his Rosenthal Act claim.[9] Initially, Plaintiff argued he was entitled to *American Pipe* tolling because the present case had not been certified for class treatment. However, in light of the Court's grant of class certification following the present motion, the *American Pipe* rule does not apply.

Nevertheless, Plaintiff argues he is entitled to tolling pursuant to *Catholic Social Services, Inc. v. Immigration and Naturalization Service*, 232 F.3d 1139 (9th Cir.2000) (*en banc*).[10] In that case, the Ninth Circuit

---

7. The parties first raised and briefed these arguments on Defendant's motion for summary judgment. The parties reasserted and refined their arguments on Defendant's motion for reconsideration.

8. *Smith* was filed on May 18, 2009, in this Court. The complaint in that case alleges claims for violations of the Rosenthal Act and the UCL, and a claim for declaratory relief. On December 11, 2009, this Court granted Defendant's motion to compel arbitration and dismissed the case without prejudice. Plaintiff's appeal of that decision is currently pending before the Ninth Circuit.

9. In the briefing on Defendant's summary judgment motion, Plaintiff also relied on another case for tolling his statute of limitations: *Arguelles–*

*Romero v. Americredit,* which was filed in Los Angeles Superior Court. In that case, as in *Smith,* the court granted the defendant's motion to compel arbitration. *Arguelles* has since been dismissed, and in the briefing on the motion for reconsideration, Plaintiff no longer relies on that case. Plaintiff's arguments about *Arguelles,* however, would apply equally to *Smith* since both courts reached the same conclusion, namely that the claims were subject to arbitration.

10. Plaintiff also suggests that tolling is appropriate because this Court has not yet issued a decision on class certification in *Smith.* The Ninth Circuit has yet to decide whether *American Pipe* tolling applies "where plaintiffs seek application of class tolling to a subsequently filed class action, where *no decision* as to certification has yet

extended the tolling doctrine of *American Pipe* and *Crown, Cork & Seal* to a subsequent class action based on its finding that the plaintiffs were "not attempting to relitigate an earlier denial of class certification, or to correct a procedural deficiency in an earlier would-be class." *Id.* at 1149.

Defendant here does not assert that Plaintiff is "attempting to relitigate an earlier denial of class certification." *Id.* However, Defendant does argue that Plaintiff is attempting "to correct a procedural deficiency in an earlier would-be class." *Id.* Specifically, Defendant contends Plaintiff is attempting to correct this Court's order compelling arbitration of Smith's claims.

Plaintiff argues the order compelling arbitration was not a "procedural deficiency," as that term is used in *Catholic Social Services.* Plaintiff asserts the court used that term to refer only to issues related to class certification. *Hunsaker v. Hurwitz*, 14 Fed.Appx. 826 (9th Cir.2001), however, refutes that assertion. In that case, the earlier-filed class action was dismissed as to certain defendants for failure to serve. The court found that failure constituted a "procedural deficiency" under *Catholic Social Services*, and thus the plaintiffs were not entitled to tolling under *American Pipe. Id.* at 829–30.

No court has addressed whether an order compelling arbitration constitutes a "proce-

dural deficiency" under *Catholic Social Services*.[11] Enforcing an arbitration clause, however, is not a ruling on the merits. Rather, it is a procedural mechanism for determining the proper forum to resolve the underlying dispute. As construed, enforcement of the arbitration clause in *Smith* is a "procedural deficiency" that Plaintiff is attempting to correct through the current case. Accordingly, Plaintiff is not entitled to tolling of the statute of limitations under *Catholic Social Services.* Absent tolling, Plaintiff has not shown that the predominance requirement is met. Specifically, Plaintiff has not shown the existence of any issues common to the class on the Rosenthal Act claim during the one year preceding the filing of the Complaint. On the contrary, the evidence reflects Defendant ceased its collection activities in that time frame, *i.e.*, more than one year before the case was filed. The only evidence of collection activity within the relevant time frame relates to Plaintiff Aho, and that evidence raises only individual issues, not common issues. Having failed to meet the predominance requirement, Plaintiff is not entitled to class certification under Rule 23(b)(3) on the issue of statutory damages under the Rosenthal Act.[12]

### ii. Restitution Subclass[13]

On the restitution subclass, Plaintiff argues the primary issue is whether Defen-

been made in the earlier filed class action." *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F.Supp.2d 1072, 1102 (N.D.Cal. 2007). However, the *DRAM* court refused to allow tolling under those circumstances, citing "concerns for the potential multiplicity of actions that could result from allowing subsequent classes of plaintiffs to unfairly 'piggyback' on prior class actions, and the court's own view that the policy reasons behind the class tolling doctrine are better served by declining to apply class tolling under the facts of this case[.]" *Id.* at 1103. The court was also concerned "that if it were to conclude otherwise, and class tolling were held to apply, then plaintiffs would essentially be permitted to file class action after class action, until the state court class actions finally decide either the merits of the earlier cases, or the class certification issue." *Id.* This Court is persuaded by the reasoning in *DRAM*, and therefore adopts the *DRAM* court's holding that tolling does not apply when the court in the earlier filed action has not issued a decision on class certification.

11. At least two courts have held that "enforcement of an arbitration clause is the equivalent of denying class certification for purposes of statute of limitations analysis." *Newport v. Dell, Inc.*, No. CV–08–0096–TUC–CKJ(JCG), 2008 WL 4347311, at *6 (D.Ariz. Aug. 21, 2008). *See also Veliz v. Cintas Corp.*, No. C03–1180 SBA, 2007 WL 841776, at *7 (N.D.Cal. March 20, 2007) (stating class action was denied by court's ruling that class representatives' claims were precluded by arbitration clause). However, neither court provided any reasoning for that conclusion.

12. Absent a showing of predominance, the Court declines to address whether certification of this claim satisfies the superiority requirement.

13. In the previous order on class certification, the Court declined to certify this subclass because Plaintiff failed to provide any evidence to satisfy the numerosity requirement. The Court invited supplemental briefing from the parties, which is now before the Court. The evidence submitted with that briefing demonstrates that

dant AmeriCredit failed to include statutorily-required information in the NOIs that it sent to Plaintiff and class members. Plaintiff asserts this issue is common to the class and can be determined by evaluating the form NOIs and uniform collection procedures. Although the Court finds there is insufficient evidence of uniform collection activities and procedures, the Court agrees that the availability of restitution can be determined by common proof, namely by reference to the NOI to determine whether it complies with the ASFA, and hence whether Defendant violated the Rosenthal Act by threatening to take action that cannot legally be taken, *i.e.*, attempting to collect or collecting an invalid debt. *See* Cal. Civ.Code § 1788.17 (incorporating provisions of federal Fair Debt Collection Practices Act ("FDCPA")); 15 U.S.C. § 1692e(5) (prohibiting the "threat to take any action that cannot legally be taken or that is not intended to be taken.") Notwithstanding these common issues, Defendant argues there are other issues that will be subject to individual proof and that will predominate over common issues, specifically, issues of injury and causation. The Court disagrees.

Defendant attempts to analogize this case to *Cohen v. DIRECTV, Inc.*, 178 Cal.App.4th 966, 101 Cal.Rptr.3d 37 (2010), where the court affirmed the trial court's denial of class certification on the ground that individual issues of reliance would predominate over common issues. But *Cohen* is distinguishable. There, the plaintiff asserted "a species of fraud in the inducement, alleging that subscribers to DIRECTV's HD services purchased those services in reliance on the company's false advertising." 178 Cal.App.4th at 969, 101 Cal.Rptr.3d 37. That claim required

a showing of "actual reliance." *Id.* at 980, 101 Cal.Rptr.3d 37. The claim at issue here, that Defendant has engaged in unlawful conduct under the UCL, does not require reliance. *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir.2011) (quoting *In re Tobacco II Cases*, 46 Cal.4th 298, 320, 93 Cal.Rptr.3d 559, 207 P.3d 20 (2009)); *Lewis*, 156 Cal.App.4th at 370–71, 67 Cal.Rptr.3d 347. Therefore, Defendant's reliance-based argument does not defeat a finding of predominance of common issues.

Defendant next argues that all class members must satisfy Article III standing and thus, individual issues of injury and causation will predominate. *See Webb v. Carter's Inc.*, 272 F.R.D. 489 (C.D.Cal.2011) (holding absent class members must satisfy Article III standing requirements). However, in *Stearns*, the Ninth Circuit stated that its law "keys on the representative party, not all of the class members, and has done so for years." 655 F.3d at 1021. Therefore, this Court's inquiry into causation and injury is limited to the representative party, Plaintiff Aho, who meets the standing requirements of Article III. (*See* Docket No. 60 (Order Granting in Part and Denying in Part Defendant's Motion for Summary Judgment) at 3–6.)[14] Accordingly, this argument does not defeat a finding of predominance in this case.

The only other possible obstacle to a finding that common issues predominate is the individual nature of the restitutionary relief sought, as class members presumably paid different sums toward their deficiency balances. Damages calculations alone, however, "cannot defeat certification." *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir.2010). If liability is proven,

the numerosity requirement is met with respect to this subclass. (*See* Supp. Decl. of John Hanson, and Notice of Recent Authority, Re: Numerosity and Proposed Restitution Subclass, Ex. 1 at 3) (the number of potential subclass members "eligible for restitution is 1,791 persons.") Accordingly, the Court proceeds with its consideration of whether this subclass should be certified under Rule 23(b)(3).

14. In any event, the proposed class here meets the standing requirements of Article III. The essence of Plaintiff's claim is that Defendant failed to create a valid and enforceable debt. Being subjected to an invalid debt satisfies Arti-

cle III standing requirements. *See White v. Trans Union, LLC*, 462 F.Supp.2d 1079, 1084 (C.D.Cal.2006) (perpetuation of erroneous credit report is sufficient injury for standing purposes). Further, the Rule 23(b)(3) subclass has suffered an additional injury in the form of payment toward an allegedly invalid debt. These injuries—being subjected to a disputed debt and payment toward a disputed debt—are traceable to Defendant's conduct, and redressable by a ruling in this case, which is all that Article III requires. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

proof of restitution due each class member can be proved with relative ease through Defendant's own records.

For these reasons, the Court concludes that Plaintiff's request for restitution under the UCL presents common questions of fact and law that predominate over individual issues and that restitutionary damages calculations—while involving individualized proof—do not defeat class certification and are appropriately certified under Rule 23(b)(3). Accordingly, the Court considers the next prong of Rule 23(b)(3), whether this subclass meets the superiority requirement.

### b. Superiority

▮▮▮▮ Rule 23(b)(3) provides a list of factors relevant to the superiority inquiry:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed.R.Civ.P. 23(b)(3). This inquiry "requires the court to determine whether maintenance of this litigation as a class action is efficient and whether it is fair," such that the proposed class is superior to other methods for adjudicating the controversy. *Wolin v. Jaguar Land Rover N. Am., LLC,* 617 F.3d 1168, 1175–76 (9th Cir.2010).

Here, Plaintiff asserts that no other class members have shown an interest in individually controlling separate actions against Defendant. Plaintiff also asserts it is unlikely there will be any difficulties in managing this case as a class action. Defendant does not dispute these arguments, but argues instead that the amount of the individual deficiency balances is sufficient incentive for class members to litigate their claims on an individual basis. Based on the common legal and factual issues, however, the Court finds that it would be more efficient to litigate this case on a class-wide basis rather than have each member of the class litigate their claim indi-

vidually (and that those class members who desire to pursue restitution and other claims individually may opt out and do so). Accordingly, the Court finds the superiority requirement has been met.

## III.

## CONCLUSION

For the reasons set out above, the Court finds Plaintiff has satisfied the requirements for certification of the following class under Rule 23(b)(2):

> All persons who were sent an NOI by AmeriCredit to an address in California at any time from March 18, 2005 through May 15, 2009, following the repossession or voluntary surrender of a motor vehicle, who were assessed a deficiency balance following the disposition of the vehicle, and against whom AmeriCredit has asserted, collected, or attempted to collect any portion of the deficiency balance. The class excludes persons whose obligations have been discharged in bankruptcy, persons against whom AmeriCredit has obtained final judgments in replevin actions, persons whose contracts include arbitration clauses that prohibit class membership, and persons who received NOIs that denied them the right to reinstate.

This class is entitled to pursue all forms of requested relief, with the exception of statutory damages under the Rosenthal Act and restitution of any amounts paid toward a deficiency balance. The Court also certifies under Rule 23(b)(3) a subclass consisting of all those who made a payment toward a deficiency and are therefore entitled to restitution. The attorneys of record for the named class Plaintiff are designated as counsel for this class and subclass.

**IT IS SO ORDERED.**