[No. D049315. Fourth Dist., Div. One. Sept. 28, 2007.]

GARY LEWIS, as Personal Representative, etc., Plaintiff and Appellant, v. ROBINSON FORD SALES, INC., Defendant and Respondent.

**COUNSEL**

Rosner & Mansfield, Hallen D. Rosner and Christopher P. Barry for Plaintiff and Appellant.

Winet, Patrick & Weaver and Catherine A. Gayer for Defendant and Respondent.

OPINION

HUFFMAN, J.—Plaintiff and appellant Robert Cornell (plaintiff) brought this action against Robinson Ford Sales, Inc. (defendant), alleging violation of California's Automobile Sales Finance Act (ASFA; Civ. Code, § 2981 et seq.; all further statutory references are to this code unless otherwise stated).[1] Additionally, he claims the Consumers Legal Remedies Act (CLRA; § 1750 et seq.) and the unfair competition law (UCL; Bus. & Prof. Code, § 17200 et seq.) were violated by way of the predicate ASFA nondisclosure violations. Plaintiff's vehicle purchase contract from defendant allegedly misrepresented the actual purchase/financed price of the new vehicle, by improperly calculating it with respect to the actual cash value of his other vehicle that was traded in as part of the transaction, but on which he still owed a larger loan balance. (In such a case, the existing loan value on the vehicle that was traded in exceeds its current cash value; see *Graciano v. Robinson Ford Sales, Inc.* (2006) 144 Cal.App.4th 140 [50 Cal.Rptr.3d 273].) The purpose of such a practice is allegedly to make the purchase contract more attractive to lenders who may consider taking assignment of the contract, or to achieve a certain monthly payment for the customer.

Plaintiff brought a motion for certification of the proposed class, which he defined as including "All persons who, since December 28, 2000, purchased a vehicle from . . . Robinson Ford Sales by entering into a Retail Installment Sales Contract ('RISC') and had the cash price of the vehicle being purchased increased on line 1.A.1 of the RISC to cover some or all of the over-allowance ('the difference in the amount owed and the actual cash value of a trade-in vehicle') and Robinson Ford failed to properly disclose the prior credit or lease balance owing on [the trade-in on] line 1.G of the RISC." Plaintiff argued this proposed class was sufficiently ascertainable, there was a well-defined community of interest, and there were common questions of law and fact among the members of the class. (Civ. Code, § 1781, subd. (b) [CLRA]; Code Civ. Proc., § 382.)

Defendant opposed the motion on all grounds, chiefly arguing that the class was not ascertainable, there was no community of interest among class members, nor any sufficient evidence as to numerosity, plaintiff Cornell was not typical of the class members, and his successor Lewis could not adequately represent the class.

---

[1] Robert Cornell, the original purchaser and named representative of the class, died in 2005, and the trial court allowed Gary Lewis, as personal representative of Robert Cornell, to maintain and continue this action as representative of the class.

The trial court denied the motion on the basis that there was no ascertainable class. At oral argument, it commented, "I do think that each case would have to be litigated separately with regard to areas of fraud and punitive damages." (See §§ 1780, subd. (a)(2), 1781, subd. (a) [permitting punitive damages awards under the CLRA].)

Plaintiff appeals, contending the subject statutory schemes amount to strict liability provisions for certain nondisclosures, such that any consideration of individualized common law fraud or punitive damages issues was inappropriate in the class certification decision. He contends all of the criteria for class certification were satisfied, and no superior method to obtain complete relief for the class was available outside of a classwide basis. Discovery has shown there are approximately 450 putative class members who were all involved in similar transactions involving adjusted cash prices, and those transactions could be generally analyzed through the available sales documentation in defendant's records.

We agree that plaintiff has made an adequate showing for certification of the proposed class, and the trial court erred in concluding otherwise. The order is reversed with directions to grant the motion to certify the class and to conduct appropriate further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

A

Transactions and Participants

On August 14, 2003, Cornell purchased a new Ford truck at defendant's automobile dealership in Calexico, California. At that time, he traded in a 2002 Honda vehicle on which he still owed $24,305, although the cash value of the Honda was only $16,000. The seller credited the buyer with $26,305 for the trade-in value of the Honda, and increased the cash price of the vehicle being purchased accordingly in the purchase contract. (There were other terms that are not relevant here, such as an additional downpayment/trade-in.) Cornell had mechanical difficulties with the new truck and pursued lemon law remedies, and eventually returned it to defendant.

Based on the trade-in of the Honda, the cash price charged to Cornell for his new truck was not the cash price that would have been put on his contract if he were a cash buyer pursuant to the ASFA, under section 2982, subdivision (e).

He took possession of the Ford truck in Arizona and was not required to pay any sales tax on the vehicle. He registered it in his home state of Oregon, where residents pay a flat rate for registration of a vehicle, such that the expense of registration was not calculated on the cash price of the vehicle.

B

Complaint and Motion: Proposed Class Defendants

Plaintiff's action was filed in November 2004 against defendant dealer and also Ford Motor Company, and pled statutory causes of action for inadequate disclosures under the ASFA, and related claims under the CLRA and the UCL (unlawful or unfair business practices). The CLRA allegations referred to deceptive practices through the selling of vehicles over the advertised price. (§§ 1770, subd. (a), 1710.) Various forms of relief were sought, including actual and consequential damages, rescission and restitution, and further, punitive damages under the CLRA only.[2] The class allegations were added after the original plaintiff died in 2005, his personal representative was substituted, and an existing trial date was vacated.

Before summarizing plaintiff's statutory arguments, we look to the definitions of the relevant terms as explained by this court in *Thompson v. 10,000 RV Sales, Inc.* (2005) 130 Cal.App.4th 950, 958, 966–972, 977 [31 Cal.Rptr.3d 18] (*Thompson*). An overallowance in this context is the difference between the appraised or actual cash value of a trade-in, and the amount put on the RISC as the agreed-upon value of the vehicle. "Negative equity in a sales transaction involving a trade-in vehicle results when the loan balance on the buyer's trade-in vehicle is greater than its value." (*Ibid.*)

The operative complaint is the second amended complaint (the complaint), alleging that defendant commonly entered into RISC's with consumers in which defendant rolled some or all of the overallowance from a trade-in into the cash price of the vehicle being purchased.[3] This practice usually took the form of failure to disclose prior credit or lease balances on the trade-in

---

[2] Other statutory causes of action against the manufacturer were previously voluntarily dismissed by plaintiff, for violation of the Song-Beverly Consumer Warranty Act (§ 1790 et seq.) and the Magnuson-Moss Warranty—Federal Trade Commission Improvement Act (15 U.S.C. § 2301(3)).

[3] RISC's are conditional sales contracts that are subject to the provisions of the ASFA. Regulation Z (12 C.F.R. § 226.1 et seq. (2007)) (regulations that interpret and explain the federal Truth in Lending Act (15 U.S.C. § 1601 et seq.)), is incorporated into the ASFA. (Civ. Code, § 2982.)

vehicles. Plaintiff contends that where, as here, the buyer's negative equity is concealed in the cash price by the inclusion of an overallowance for a trade-in, the proper statutory disclosures of the actual cash price were not made, the buyer/consumer may potentially pay higher amounts of sales tax and higher registration fees because of the "rolled" negative equity, and the contract may be unenforceable by statute. (§§ 2983, 2983.1.)[4] Plaintiff contends defendant "misrepresented and misstated the 'cash price' " of the new vehicle, which was a violation of ASFA disclosure requirements in several respects, and therefore was also a violation of the CLRA and/or UCL.

Plaintiff (through the representative for Cornell) brought a motion for class certification, proposing a class of those persons who, since December 28, 2000, had entered into a RISC with defendant, which included the following components: (1) the cash price of the vehicle being purchased was increased in the RISC to cover some or all of the overallowance ("the difference in the amount owed and the actual cash value of a trade-in vehicle"), and (2) the prior credit or lease balance owing on the trade-in was not properly disclosed on the RISC. Plaintiff argued the claims in the complaint could be appropriately litigated in a class action under the ASFA, and in accordance with the class action criteria set forth in the CLRA. (§ 1781, subd. (b).)

In plaintiff's attorney's supporting declarations, deposition excerpts from defendant's sales manager and employees were incorporated to demonstrate that pursuant to defendant's records, there were approximately 450 purchase contracts that might represent potential class members. Such transactions were documented in deal jackets that normally included a RISC, a "recap deal" sheet, the vehicle invoice, or related documents, from which the overallowance could be calculated. Plaintiff submitted a proposed notice of pendency of class action, defining the class as outlined above.

Defendant opposed the motion, arguing that even though it had processed numerous purchase transactions in this manner, a class action was nevertheless inappropriate, because the proposed class was not ascertainable and the

---

[4] Section 2983 provides for relief to an aggrieved buyer as follows: "If the seller, except as the result of an accidental or bona fide error in computation, violates any provision of Section 2981.9 [format of contract] or of subdivision (a), (j), or (k) of Section 2982 [requiring certain disclosures], the conditional sale contract shall not be enforceable, except by a bona fide purchaser . . . or until after the violation is corrected as provided in Section 2984, *and if the violation is not corrected the buyer may recover from the seller the total amount paid, pursuant to the terms of the contract, by the buyer to the seller or his assignee. The amount recoverable for property traded in as all or part of the downpayment shall be equal to the agreed cash value of such property as the value appears on the conditional sale contract or the fair market value of such property as of the time the contract is made, whichever is greater.*" (Italics added.) Section 2983.1 is a similar provision applicable to finance charges.

necessary community of interest among class members was lacking. Defendant referred to the individualized negotiations that each potential class member must have conducted in purchasing a vehicle and arranging for a trade-in, and claimed proper disclosures had been made orally in some cases. Defendant also argued there was insufficient evidence as to numerosity, Cornell was not typical of the class members, his successor Lewis could not adequately represent the class, and the motion should have been brought earlier in the proceedings. In reply, plaintiff maintained that all of the elements for class certification were satisfied.

## C

### Ruling

At oral argument before the trial court, the parties discussed the criteria to be used in deciding a motion for class certification. Defendant contended that even if there were common issues regarding potential statutory violations under the ASFA, there were still reasons to deny the class certification because each potential plaintiff's case would have to be litigated separately with regard to how the deal was negotiated, particularly with regard to potential violations of the CLRA, which could result in punitive damages awards. In response, plaintiff argued the various form contracts could be analyzed in like manner for whether they properly disclosed the negative equity represented by a trade-in vehicle, as opposed to inflating the supposed sale price. Plaintiff contended there was no fraud or tort cause of action pled, but rather allegations of deceptive business practices under the standards of the ASFA, which did not involve any punitive damages claims. Even though punitive damages were potentially available under the CLRA, that should not preclude class treatment because the merits of the underlying statutory violations alleged had not yet been resolved.

The court based its tentative ruling primarily on a finding that the class was not ascertainable. Although the court questioned whether plaintiff, the personal representative of Cornell, would be an adequate representative of the class (since the facts of Cornell's particular transaction had not required him to pay any increased sales tax or registration fees that were based on an inflated sale price), the court did not consider that to be a dispositive factor. Rather, the court stated, "each case would have to be litigated separately with regard to areas of fraud and punitive damages." The court concluded by stating; "I think you would have testimony forthcoming to a jury, particularly in the area of punitive damages, and under those circumstances I just don't

find that we have an ascertainable class that would be represented by Mr. Cornell's factual situation . . . ."

The trial court issued an order denying class certification. The ruling states "Court finds there is no ascertainable class. Motion for class certification is denied." Plaintiff appeals.

## DISCUSSION

We first set out the standard of review and principles governing class certification rulings. We then consider the merits of the ruling with respect to the different statutory schemes pled.

### I

### STANDARD OF REVIEW AND GENERAL CLASS ACTION RULES

Trial courts are normally afforded great discretion in granting or denying certification. (*Lockheed Martin Corp. v. Superior Court* (2003) 29 Cal.4th 1096, 1106 [131 Cal.Rptr.2d 1, 63 P.3d 913] (*Lockheed Martin*).) If a trial court ruling is supported by substantial evidence, it normally will not be overturned " ' "unless (1) improper criteria were used [citation]; or (2) erroneous legal assumptions were made [citation]" [citation]. . . . "Any valid pertinent reason stated will be sufficient to uphold the order." ' [Citations.]" (*Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 327 [17 Cal.Rptr.3d 906, 96 P.3d 194] (*Sav-On Drug*).)

In determining class certification questions, the courts do not decide the merits of the case, but must focus on whether common or individual questions are likely to arise in the action. "[I]n determining whether there is substantial evidence to support a trial court's certification order, we consider whether the theory of recovery advanced by the proponents of certification is, as an analytical matter, likely to prove amenable to class treatment." (*Sav-On Drug, supra*, 34 Cal.4th at p. 327.) " 'Reviewing courts consistently look to the allegations of the complaint and the declarations of attorneys representing the plaintiff class to resolve this question.' " (*Id.* at p. 327.)

The criteria for class certification are well established. " 'Section 382 of the Code of Civil Procedure authorizes class suits in California when "the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court." The burden is on the party seeking certification to establish the

existence of both an ascertainable class and a well-defined community of interest among the class members.' [Citation.]" (*Lockheed Martin, supra,* 29 Cal.4th at pp. 1103–1104.)

Also as outlined in *Lockheed Martin,* " 'The community of interest requirement [for class certification] embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class.' [Citation.] Plaintiffs acknowledge it is their burden to establish the requisite community of interest and that 'the proponent of certification must show, inter alia, that questions of law or fact common to the class predominate over the questions affecting the individual members.' [Citation.]" (*Lockheed Martin, supra,* 29 Cal.4th at p. 1104.)

■ In addition to demonstrating the necessary community of interest among class members, the proponent of the class must show that the predominant common issues of law and fact can be effectively managed in a class action: "We long ago recognized 'that each class member might be required ultimately to justify an individual claim does not necessarily preclude maintenance of a class action.' [Citation.] Predominance is a comparative concept, and 'the necessity for class members to individually establish eligibility and damages does not mean individual fact questions predominate.' [Citations.] Individual issues do not render class certification inappropriate so long as such issues may effectively be managed. [Citations.] [¶] Nor is it a bar to certification that individual class members may ultimately need to itemize their damages. We have recognized that the need for individualized proof of damages is not per se an obstacle to class treatment [citation] . . . ." (*Sav-On Drug, supra,* 34 Cal.4th at pp. 334–335.)

Such practical considerations are left to the discretion of the trial courts, which are " 'ideally situated to evaluate the efficiencies and practicalities of permitting group action . . . .' " (*Lockheed Martin, supra,* 29 Cal.4th at p. 1106.) For example, trial courts can fashion methods to manage individual questions that are " 'procedurally innovative' [citation]." (*Sav-On Drug, supra,* 34 Cal.4th at p. 339; see also *In re Cipro Cases I & II* (2004) 121 Cal.App.4th 402, 410 [17 Cal.Rptr.3d 1] [" 'The ultimate question in every case of this type is whether . . . the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants.' [Citation.] The trial court must 'carefully weigh respective benefits and burdens and . . . allow maintenance of the class action only where substantial benefits accrue both to litigants and the courts' "].)

■ In *Feitelberg v. Credit Suisse First Boston, LLC* (2005) 134 Cal.App.4th 997, 1015 [36 Cal.Rptr.3d 592], the court clarified that a UCL

claim may be properly subject to treatment as a class action " 'when the statutory requirements of section 382 of the Code of Civil Procedure are met.' [Citation.] That authority is now explicit in the amended statute, which authorizes the pursuit of 'representative claims or relief on behalf of others' provided that the claimant 'complies with Section 382 of the Code of Civil Procedure . . . .' " (134 Cal.App.4th at p. 1015 [of the three varieties of unfair competition established by Bus. & Prof. Code, § 17200, plaintiff mainly asserts the unlawful prong, based on the other alleged statutory violations].)

## II

### STATUTORY SCHEMES FOR RECOVERY; ANALYSIS

We next consider whether the theories of recovery that plaintiff is pursuing are analytically appropriate for class treatment. (*Sav-On Drugs, supra*, 34 Cal.4th at p. 328.) Both an ascertainable class and a well-defined community of interest among the class members are required, including predominant common legal and factual questions, as well as adequate representation of typical claims by the class representative. (*Lockheed Martin, supra*, 29 Cal.4th at pp. 1103–1104.) If such statutory causes of action could properly be handled in a class format, we also must examine the trial court ruling to determine whether the court relied on improper criteria or made erroneous legal assumptions. (*Sav-On Drugs, supra*, at pp. 326–327.)

In *Thompson, supra*, 130 Cal.App.4th at page 971, this court found violations of the ASFA where the dealer had utilized an overallowance on a trade-in vehicle in a credit transaction in order to increase the cash price over that which would have been paid by a cash customer, but without the proper disclosures. This court held that inclusion of this overallowance was a condition of credit requiring disclosure.

Here, the trial court's ruling focused on the ascertainable class issue, by apparently giving undue credit to the defense argument that since various customers had engaged in individual negotiations, regarding the purchase price and trade-in value, individual fraud issues must be predominant, along with punitive damages questions. To the extent the trial court was concerned with punitive damages, that reasoning could only apply to the CLRA claim (§§ 1780, subd. (a)(2), 1781, subd. (a)), and would have no application to the ASFA or UCL theories. In any case, those were not appropriate considerations for determining ascertainability of the class regarding the issues raised on statutory disclosure standards. Rather, to determine the identity of potential class members, the court will look to whether there are any objective criteria to describe them and whether they can be found without unreasonable expense or effort through business or official records. (*Daar v. Yellow Cab Co.*

(1967) 67 Cal.2d 695, 706 [63 Cal.Rptr. 724, 433 P.2d 732]; *Rose v. City of Hayward* (1981) 126 Cal.App.3d 926, 932 [179 Cal.Rptr. 287].)

Also, the other major class criteria regarding community of interest (predominant common questions of law and fact), referred to at the trial court hearing were discussed in terms only of potentially different damages for different customers from increased sales tax or registration fees. At that time, plaintiff was arguing any such problems could be dealt with through sub-classes, although on appeal, that issue is not discussed by the parties.

In any case, the record supports a conclusion that plaintiff's proposed class definition was workable in light of the common issues. Plaintiff's theory is that the mandatory disclosures required by the ASFA regarding the purchase price of the subject vehicle are analogous to a strict liability provision, and individualized proof of reliance or financial harm to the customer is therefore not required for liability. (§ 2983; *Thompson, supra*, 130 Cal.App.4th at pp. 966–967, 978.) The core factual issues are whether the cash price of the vehicle being purchased included an overallowance for a trade-in or leased vehicle, without adequate written disclosures. The resulting legal questions to be resolved are whether this failure to disclose negative equity on the RISC violates the ASFA, as a matter of statutory interpretation and contract construction. If plaintiffs prevail, under sections 2983 and 2983.1, remedies are provided that can be calculated for each class member. (See fn. 4, *ante*.)

These chief allegations are properly amenable to class treatment, due to predominant common questions of law and fact, because the existence of any statutory violations may be determined by examining the face of the records provided by defendant, with regard to the 450 potentially subject transactions identified through discovery. Each of those transactions can be evaluated through the deal jacket, which includes the RISC, the "recap deal" sheet for each transaction, and sometimes the vehicle invoice or other documents. That evidence was undisputed. Under *Thompson, supra*, 130 Cal.App.4th at pages 966–967, 969–972, 977–978, the subject ASFA disclosure requirements are mandatory, and an otherwise proper class certification should not be defeated through arguments that some customers were verbally told about the adjusted cash prices for the vehicle. (§§ 2982, subd. (a), 2983.) Contrary to the apparent view of the trial court, plaintiff is not seeking to prove common law fraud in the individual transactions. (See *Massachusetts Mutual Life Ins. Co. v. Superior Court* (2002) 97 Cal.App.4th 1282, 1292 [119 Cal.Rptr.2d 190] [CLRA claims do not require individualized proof of causation of injury from a deceptive practice].)

Likewise, any related UCL allegations are not dependent on a finding of separate instances of fraud, because the business transactions here could still

qualify as unlawful or likely to deceive the public, through any proven violations of the ASFA. (Bus. & Prof. Code, § 17200.)

■ Regarding the possibility of punitive damages awards under CLRA, it was premature for the trial court to consider that issue with respect to class certification, because the merits of the statutory claims had not yet been resolved. (§§ 1780, subd. (a)(2), 1781, subd. (a).) Also, the fact that punitive damages are pled will not alone bar class certification. (*Richmond v. Dart Industries, Inc.* (1981) 29 Cal.3d 462, 477 [174 Cal.Rptr. 515, 629 P.2d 23].) Even though defendant was denying the existence of any fraudulent intent, those equitable considerations are not dispositive of the statutory claims at the class certification stage of the proceedings. (See *Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 179 [96 Cal.Rptr.2d 518, 999 P.2d 706]; *Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435–436 [97 Cal.Rptr.2d 179, 2 P.3d 27].)

Thus, the facts that different customers arrived at different deals, based on their trade-in or lease values compared to the purchased vehicle cost, can be accounted for in a class action context through the use of formulas or other means of implementing the underlying legal findings. "Individual issues do not render class certification inappropriate so long as such issues may effectively be managed. [Citations.] [¶] Nor is it a bar to certification that individual class members may ultimately need to itemize their damages. We have recognized that the need for individualized proof of damages is not per se an obstacle to class treatment [citation] . . . ." (*Sav-On Drug, supra*, 34 Cal.4th at pp. 334–335.) Plaintiff, the personal representative of Cornell, has not been shown to be an inadequate representative of the class, nor did the court actually include a ruling on that issue in its order. There will be no need for each potential class member to make an individualized showing of liability or entitlement to relief, except for variations regarding damages that can be addressed through categories such as customers who paid increased sales tax or increased registration fees based on an inflated sales price. Such practical issues can properly be left to the trial court in administering the class action. (*Lockheed Martin, supra*, 29 Cal.4th at p. 1106.)

■ For all of these reasons, we conclude the trial court erroneously denied class certification, because the record shows there is a class that can be ascertained on the statutory violations alleged, without undue interference from individualized fraud or punitive damages issues. Plaintiff has carried his burden of showing the required community of interest in the current class definition, such that the maintenance of a class action would be advantageous to the judicial process and to the litigants. (*In re Cipro Cases I & II, supra*, 121 Cal.App.4th at p. 410.)

## DISPOSITION

The order is reversed with directions to grant class certification and to conduct appropriate further proceedings. Costs are awarded to appellant.

Benke, Acting P. J., and Nares, J., concurred.

A petition for a rehearing was denied November 14, 2007, and respondent's petition for review by the Supreme Court was denied February 13, 2008, S158662.