Filed 10/9/14; pub. order 11/4/14 (see end of opn.)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

|  |  |
|---|---|
| AMANDA KIGHT et al., | D063363 |
| Plaintiffs and Appellants, |  |
| v. | (Super. Ct. No. GIC866032) |
| CASHCALL, INC., |  |
| Defendant and Respondent. |  |

APPEAL from an order of the Superior Court of San Diego County, Lorna Alksne, Judge. Affirmed.

Law Offices of Douglas J. Campion, Douglas J. Campion; Hyde & Swigart and Joshua B. Swigart for Plaintiffs and Appellants.

Manatt, Phelps & Phillips, Brad W. Seiling, Joanna S. McCallum, Joanna H. Sattler and Justin C. Johnson for Defendant and Respondent.

Plaintiffs challenge a court order decertifying a class alleging violations of Penal Code section 632, the statute prohibiting the undisclosed monitoring or recording of confidential telephone conversations.[1]  We affirm the order.

INTRODUCTION

In 2006, several borrowers sued their lender, CashCall, Inc., alleging CashCall monitored their telephone conversations without their knowledge or consent.  Over CashCall's objections, the trial court certified a class on one of the claims, an alleged violation of section 632, which imposes liability on a "*person*" who intentionally "eavesdrops upon or records [a] *confidential communication*" and engages in this conduct "without the consent of all parties."  (Italics added.)

After class certification, CashCall successfully moved for summary adjudication on the section 632 claim.  The trial court found as a matter of law a corporation does not violate the statute when one of its supervisory employees secretly monitors a conversation between a customer and another corporate employee, reasoning that two employees are a single "person" within the meaning of the statute.

We reversed this order in a published decision.  (*Kight v. CashCall, Inc.* (2011) 200 Cal.App.4th 1377 (*CashCall II*).)  We held the statute applies even if the unannounced listener is employed by the same corporate entity as the known recipient of the conversation, concluding the trial court's statutory interpretation was inconsistent with section 632's language and purpose.  (*Id.* at pp. 1391-1395.)  We also rejected CashCall's

---

[1]    All further statutory references are to the Penal Code unless otherwise specified.

alternative argument that summary adjudication was proper because the undisputed facts established the telephone conversations were not "*confidential communication[s]*" within the meaning of the statute. (*Id.* at pp. 1396-1398, italics added.) We explained the confidential-communication statutory element requires plaintiffs to show they had an "*objectively reasonable expectation*" their conversations would not be secretly monitored, and we held triable factual issues existed on this statutory element. (*Id.* at p. 1396.) In so holding, we stated the "issue whether there exists a reasonable expectation that no one is secretly listening to a phone conversation is generally a question of fact that may depend on numerous specific factors," and provided examples of these individualized factors applicable in this case. (*Ibid*.)

On remand, CashCall moved to decertify the class based primarily on its argument that the issue whether any particular class member can satisfy this reasonable-expectation test requires an assessment of numerous individual factors (including those identified in the *CashCall II* opinion) and these individual issues predominate over any remaining common issues, making a continued class action unmanageable. Plaintiffs opposed the motion, arguing CashCall did not meet its burden to establish changed circumstances necessary for class decertification and, alternatively, common issues continued to predominate in the case.

The court granted the decertification motion. The court found the *CashCall II* decision constituted changed circumstances and "individual issues regarding the individual putative class members' 'objectively reasonable expectation of privacy' predominate over defendant's alleged uniform policies." Plaintiffs appeal. We affirm.

3

The court did not abuse its discretion in decertifying the class based on the record before it.

FACTUAL AND PROCEDURAL BACKGROUND

To understand the parties' appellate arguments, it is necessary to briefly review plaintiffs' claims, the parties' arguments underlying the initial certification order, the summary adjudication ruling, our prior appellate decision, and the parties' arguments underlying the decertification order.

*Complaint*

In their complaint, plaintiffs alleged they each borrowed money from CashCall, and, in making the loans and collecting delinquent payments on those loans, CashCall "secretly" monitored and eavesdropped on telephone conversations between CashCall employees and plaintiffs, including conversations pertaining to "sensitive financial information." Plaintiffs alleged CashCall conducted the "illegal monitoring . . . for the purpose of assisting [CashCall] in its collection efforts" without the "knowledge or consent" of plaintiffs or the class members. Plaintiffs alleged several causes of action, including unlawful invasion of privacy in violation of section 632. Plaintiffs sought damages permitted under section 632 (the greater of $5,000 per violation or three times the amount of actual damages) and an injunction to prohibit CashCall from continuing to engage in this practice. (See § 637.2.)

*Class Certification*

Plaintiffs then moved to certify the class, arguing the proposed class and class representatives satisfied each of the elements of a class action. In support, they proffered

4

the declaration of each named plaintiff: Trevonda Holder, Marvin Knecht, and Edward Castell.[2]

Plaintiff Holder said she borrowed $2,600 from CashCall in June 2005, and thereafter would occasionally receive calls from CashCall asking about her payments. She learned during the litigation that one of these " 'outbound' " calls (on March 20, 2006) was secretly monitored by a CashCall supervisor.

Plaintiff Knecht said he borrowed $10,000 from CashCall in August 2004. He said that he would occasionally receive calls from CashCall asking about the status of his payments, and he would return those calls. During this action, he learned that a CashCall supervisor "surreptitiously listen[ed] in on" one of these " 'inbound' " calls, on December 28, 2005.

Plaintiff Castell said he borrowed $10,000 from CashCall in December 2005. He said he would occasionally receive phone messages from CashCall asking about the status of his payments, and he would return those calls. During this action, he learned that a CashCall supervisor "surreptitiously listen[ed] in on" one of these " 'inbound' " calls, on April 20, 2006.

These plaintiffs said they were not advised that someone would be listening to the conversation; during the conversation they disclosed "confidential" information regarding their loan and their financial circumstances; they "objectively believed [they were]

---

2    These plaintiffs were substituted for the original plaintiffs after precertification discovery was completed. (See *CashCall, Inc. v. Superior Court* (2008) 159 Cal.App.4th 273.)

having a conversation only with the collector to whom I was speaking"; and they did not consent to this monitoring.

In opposition to the motion, CashCall argued primarily that class certification was improper because the call monitoring does not violate section 632 because two corporate employees are a "single 'person' " for purposes of the statute. CashCall also argued that common issues did not predominate because each class member would be required to individually testify regarding whether he or she had an objectively reasonable expectation that their calls were not being monitored.

In reply, plaintiffs countered that CashCall's legal interpretation of section 632 was erroneous, and in any event this asserted defense was a common issue among all class members. Regarding the issue whether each class member would need to testify, plaintiffs asserted that the statutory test is objective, and therefore it was not dependent on individualized evidence, i.e., that evidence showing each plaintiff believed the calls were not being monitored was sufficient to show the calls were a " 'confidential communication' " under the statute. Plaintiffs further clarified that their requested damages would be limited to the $5,000 statutory penalty for each monitored call.

After considering the parties' arguments and conducting a hearing, the court granted the class certification motion on plaintiffs' section 632 claim (with the $5,000 damages limitation). The court found plaintiffs met their burden to show each of the class certification elements, including that common issues predominate over individual issues. The court stated that it "need not, and does not, determine for purposes of this motion whether defendant's alleged monitoring of telephone calls constitutes

6

'eavesdropping' for purposes of section 632. This issue constitutes a predominant common question of law and fact."

The court defined the class as: " 'All persons [who] were physically in California at the time they had telephone conversations in which defendant [CashCall], its employees, contractors, agents . . . , monitored such conversations, within one year prior to May 16, 2006 . . . .' " The court also identified two subclasses. Subclass One consisted of class members monitored on *outbound* calls from CashCall employees or agents to the class member. Subclass Two consisted of class members who were monitored on *inbound* calls from the class member to a CashCall employee or agent.

### *Summary Adjudication*

CashCall then moved for summary adjudication on plaintiffs' section 632 class claim. The following facts were before the court in the summary adjudication proceedings.[3]

All members of the class are or were CashCall borrowers. (*CashCall II, supra*, 200 Cal.App.4th at p. 1385.) CashCall customers must telephone CashCall and speak to a CashCall representative to complete their loan application. (*Ibid.*) During the class period, CashCall randomly monitored 547 calls to and from the servicing department (the department that engages in collections and payment enforcement activities): 225 inbound calls and 322 outbound calls. (*Ibid.*) The calls were monitored for quality control

---

[3] We summarize these facts here. A more detailed description is contained in *CashCall II, supra*, 200 Cal.App.4th at pages 1385-1386.

purposes. (*Ibid.*) Supervisors monitored calls by electronically listening to the conversation in real time. (*Ibid.*) The calls were not recorded. (*Ibid.*)

With respect to call monitoring disclosures, CashCall used an Interactive Voice Response system (IVR) to receive and route calls. (*CashCall II, supra*, 200 Cal.App.4th at p. 1385.) Under this system, a caller was greeted by an automated message that offered two options: pressing "1" or "2." (*Ibid.*) A caller who selected either of these options automatically heard the " 'Call Monitoring Disclosure' " which stated: " 'This call may be monitored or recorded for quality control purposes.' " (*Ibid.*) The IVR would then route the call to the selected department. (*Ibid.*)

If a caller did not select either Option 1 or 2, or pressed "0", the caller would be connected to a CashCall operator. (*CashCall II, supra*, 200 Cal.App.4th at p. 1385.) The caller would then hear the Call Monitoring Disclosure only if the operator routed the call to a particular department as opposed to a particular representative. (*Ibid.*) Additionally, a caller could press "4" and then dial a representative's direct extension. (*Ibid.*) A caller would learn of this option after having spoken with a CashCall representative. (*Id.* at pp. 1385-1386.) CashCall employees sometimes gave out their direct line extensions to existing customers and instructions to avoid the prompts by dialing "4." (*Ibid.*) The Call Monitoring Disclosure was not announced if a caller reached a CashCall employee through the "4" option. Additionally, the Call Monitoring Disclosure was never announced on outbound calls (calls from a CashCall employee to a class member). (*Id.* at p. 1386.)

8

Based on these facts and additional evidence relating to the phone conversations of three named plaintiffs, CashCall argued plaintiffs' section 632 claim failed as a matter of law because: (1) section 632 prohibits only an unannounced third party from overhearing a conversation and two corporate employees count as a single party under corporations law; (2) the undisputed facts establish plaintiffs' calls with CashCall employees were not " 'confidential communications' " within the meaning of section 632; and (3) each plaintiff heard the Call Monitoring Disclosure during the borrower-lender relationship. (*CashCall II, supra*, 200 Cal.App.4th at p. 1386.)

The court granted the summary adjudication only on the first ground and did not reach the other two grounds. (*CashCall II, supra*, 200 Cal.App.4th at p. 1386.) The court concluded there was no section 632 violation as a matter of law because the telephone conversations were monitored by an employee of the same corporation who employed the call participant. (*Ibid.*)

### CashCall II

On appeal, we held the court erred in concluding section 632 did not apply when a corporate employee secretly monitors a conversation between another corporate employee and a customer. (*CashCall II, supra*, 200 Cal.App.4th at pp. 1388-1395.) We explained that in *Flanagan v. Flanagan* (2002) 27 Cal.4th 766 (*Flanagan*), our Supreme Court held that section 632 protects an individual's right to know who is listening to a telephone conversation, and an actionable violation occurs regardless whether the person knows or should know the conversation may later be disclosed. (*CashCall II, supra*, 200 Cal.App.4th at pp. 1389-1395.) Based on this holding, the statutory language, and the

9

policies underlying the statute, we concluded that section 632 applies even if the unannounced listener is employed by the same corporate entity as the known participant in the conversation. (*Id.* at pp. 1391-1395.)

We then addressed CashCall's argument that the summary adjudication could be affirmed on the alternate ground that plaintiffs had no reasonable expectation of privacy in the conversation. (*CashCall II, supra*, 200 Cal.App.4th at p. 1396.) Although we agreed that a plaintiff's reasonable expectation of privacy was a required element to recover under the statute, we concluded that factual issues existed on this issue. (*Id.* at pp. 1396-1398.) Because our reasoning is important to the decertification issue, we describe our analysis in some detail.

We initially reiterated that section 632 applies only to a "confidential communication" (§ 632, subd. (a)), and that the statute defines a "confidential communication" to " '*include*[ ] any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, but *exclude*[ ] a communication made in a public gathering . . . , *or in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded*' (§ 632, subd. (c))." (*CashCall II, supra*, 200 Cal.App.4th at p. 1396, italics added.)

We then described the legal test to be applied in determining whether a communication is confidential under this statutory language: "A communication is 'confidential' under this definition if a party to the conversation had an *objectively reasonable expectation* that the conversation was *not being overheard or recorded.*

10

(*Flanagan, supra*, 27 Cal.4th at pp. 768, 774-776.)  The issue whether there exists a reasonable expectation that no one is secretly recording or listening to a phone conversation is generally a question of fact.  (See *Lieberman v. KCOP Television, Inc.* [(2003)] 110 Cal.App.4th [156,] 169 ['[i]t is for the jury to decide whether under the circumstance presented [the plaintiff] could have *reasonably* expected that the communications were private' and thus have engaged in a protected 'confidential communication' under § 632]; see also *Sanders v. American Broadcasting Companies* [(1999)] 20 Cal.4th [907,] 926 [noting generally the factual assessment of the reasonableness of a privacy expectation].)"  (*CashCall II, supra*, 200 Cal.App.4th at pp. 1396-1397.)

Applying these principles, we determined CashCall failed to meet its "burden to present evidence showing plaintiffs (and the class members) had no reasonable expectation of privacy as a matter of law . . . ."  (*CashCall II, supra*, 200 Cal.App.4th at p. 1397.)  In so doing, we made clear we were not expressing an opinion whether plaintiffs would ultimately prevail on this issue at trial, and stated "[t]he issue whether there exists a reasonable expectation that no one is secretly listening to a phone conversation is generally a question of fact that may depend on numerous specific factors, such as whether the call was initiated by the consumer or whether a corporate employee telephoned a customer, the length of the customer-business relationship, the customer's prior experiences with business communications, and the nature and timing of any recorded disclosures."  (*Id.* at p. 1396.)

11

We also rejected CashCall's argument that the evidence established as a matter of law that it provided adequate notice of the call monitoring because all or most callers were informed at the outset of the borrower-lender relationship that calls " 'might be monitored.' " (*CashCall II, supra*, 200 Cal.App.4th at p. 1398.) We discussed the California Supreme Court's observation in *Kearney v. Salomon Smith Barney, Inc.* (2006) 39 Cal.4th 95 (*Kearney*) that even though some callers might know or have reason to know their telephone calls with financial brokers are being recorded, " 'it appears equally plausible that, in the absence of such an advisement, a California consumer reasonably would anticipate that such a telephone call is not being recorded, particularly in view of the strong privacy interest most persons have with regard to the personal financial information frequently discussed in such calls.' " (*CashCall II, supra*, 200 Cal.App.4th at p. 1399, quoting *Kearney, supra*, 39 Cal.4th at p. 118, fn. 10.)[4] We concluded that a single call-monitoring disclosure at the outset of the borrower-lender relationship "would not necessarily inform a borrower that . . . this call *and all future calls* with CashCall may be monitored or recorded," and there were factual issues regarding whether all inbound-caller class members and/or outbound-caller class members received the message. (*Ibid.*)

Based on our conclusions that the section 632 claim was not barred as a matter of law, and that the "confidential communication" and consent/notice issues were factual issues for the trier of fact, we reversed the summary adjudication order and remanded for

---

4    *Kearney*'s discussion of the issue arose during the court's resolution of a conflicts of law question. (*Kearney, supra*, 39 Cal.4th at pp. 115-120.)

further proceedings in the trial court. (*CashCall II, supra*, 200 Cal.App.4th at pp. 1388-1400.) The California Supreme Court denied CashCall's petition for review.

*Decertification Motion After Remand*

Several months later, CashCall moved to decertify the class, arguing *CashCall II*'s identification of numerous individual factual issues relevant to the confidential-communications issue demonstrated that liability on the section 632 claim "cannot be resolved on a class-wide basis." CashCall supported this argument by focusing on the circumstances surrounding each of the named plaintiff's telephone conversations with CashCall employees. This evidence showed that each plaintiff had different experiences regarding the timing, extent, and nature of the monitored calls and of the Call Monitoring Disclosure, and had different prior experiences with business communications. For example, plaintiff Holder admitted to hearing the disclosure at some point, and the two other plaintiffs did not remember ever hearing a disclosure. Additionally, plaintiffs Holder and Knecht each had prior experience with business call monitoring at their jobs while plaintiff Castell did not. Before their monitored calls, plaintiff Holder was a CashCall customer for nine months, Knecht for 16 months, and Castell for only five months. Plaintiff Holder made at least three inbound calls to CashCall before her monitored call, Castell made one, and Knecht made numerous calls. Holder had two calls with CashCall on the day that her call was monitored; Knecht had 17 calls with CashCall within three months of his monitored call; and Castell had only two or three total calls with CashCall before his monitored call.

13

CashCall argued that although each of the plaintiffs declared he or she did not believe anyone was listening to the calls, individual facts unique to each plaintiff "are relevant to assess whether each Plaintiff had an objectively reasonable belief that calls were not being monitored." CashCall also argued that section 632 prohibits eavesdropping only "without the consent" of all parties, and that "[t]he issue of consent cannot be determined on a class-wide basis," particularly regarding the inbound-caller class members because they may have heard the Call Monitoring Disclosure at the outset of the monitored call. CashCall argued the "case would quickly splinter into more than 500 mini-trials" and would be riddled with administrative burdens and complexities that defeat the purpose of the class action mechanism.

Plaintiffs opposed the motion on grounds that the court had already rejected these same arguments in granting the initial certification motion, and CashCall failed to satisfy its burden to show new evidence or changed circumstances to support a different outcome. Plaintiffs further argued that common issues continue to predominate, including that it was undisputed CashCall secretly monitored more than 500 calls, and no outbound-caller class member received the Call Monitoring Disclosure during the monitored telephone conversation. Plaintiffs argued that whether inbound-caller class members heard the Call Monitoring Disclosure warning during or before the monitored inbound call could be determined on "question and answer forms."

After considering the parties' submissions and conducting a hearing, the court granted the motion. The court stated: "The appellate court's decision in [*CashCall II*] constitutes a 'changed circumstance' for purposes of the [decertification] analysis . . . . [¶]

14

[CashCall] persuasively argues that individual issues regarding the individual putative class members' 'objectively reasonable expectation of privacy' predominate over defendant's alleged uniform policies.  Therefore, this decertification motion is granted."

Plaintiffs appeal.

## DISCUSSION

### I. *Decertification Motions*

" ' "Class actions serve an important function in our judicial system.  By establishing a technique whereby the claims of many individuals can be resolved at the same time, the class suit both eliminates the possibility of repetitious litigation and provides small claimants with a method of obtaining redress. . . ." '  [Citations.]  . . . However, 'because group action . . . has the potential to create injustice, trial courts are required to " 'carefully weigh respective benefits and burdens and to allow maintenance of the class action only where substantial benefits accrue both to litigants and the courts.' " '  [Citations.]"  (*Bradley v. Networkers Internat., LLC* (2012) 211 Cal.App.4th 1129, 1141.)  "The proponent must show the 'class action is superior to individual lawsuits or alternative procedures for resolving the controversy.'  [Citations.]"  (*Ibid.*)

The party seeking certification must establish a "well-defined community of interest," including that common questions of law or fact will predominate in the litigation.  (*Duran v. U.S. Bank National Assn.* (2014) 59 Cal.4th 1, 28 (*Duran*).)  On the predominance issue, "the 'ultimate question' . . . is whether 'the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial

15

process and to the litigants.' [Citations.] 'The answer hinges on "whether the theory of recovery advanced by the proponents of certification is, as an analytical matter, likely to prove amenable to class treatment." [Citation.] . . . "As a general rule if the defendant's liability can be determined by facts common to all members of the class, a class will be certified even if the members must individually prove their damages." [Citations.]' [Citations.]" (*Ibid.*) Although a court may properly certify a class even if individual issues need to be considered at trial, "class treatment is not appropriate 'if every member of the alleged class would be required to litigate numerous and substantial questions determining his individual right to recover following the "class judgment" ' on common issues." (*Ibid*.)

After certification, a trial court retains flexibility to manage the class action, including to decertify a class if "the court subsequently discovers that a class action is not appropriate." (*Weinstat v. Dentsply Internat., Inc.* (2010) 180 Cal.App.4th 1213, 1226; accord *Duran, supra*, 59 Cal.4th at pp. 29-30.) To prevail on a decertification motion, a party must generally show "new law or newly discovered evidence showing changed circumstances. [Citation.] A motion for decertification is not an opportunity for a disgruntled class defendant to seek a do-over of its previously unsuccessful opposition to certification. 'Modifications of an original class ruling, including decertifications, typically occur in response to a significant change in circumstances, and "[i]n the absence of materially changed or clarified circumstances . . . courts should not condone a series of rearguments on the class issues[.]" [Citation.]' " (*Williams v. Superior Court* (2013) 221 Cal.App.4th 1353, 1360.) A "class should be decertified 'only where it is clear there exist

16

changed circumstances making continued class treatment improper.' " (*Green v. Obledo* (1981) 29 Cal.3d 126, 148 (*Green*).)

A party moving for decertification generally has the burden to show that certification is no longer warranted, and courts have broad discretion in ruling on this issue. Trial courts " ' "are ideally situated to evaluate the efficiencies and practicalities of permitting group action" ' " and therefore are " ' "afforded great discretion" ' " in evaluating the relevant factors. (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1022.) However, "[d]ecertification resting on improper legal criteria or an incorrect assumption is an abuse of discretion. [Citations.] . . . We thus review only the reasons the court stated for its order, and we reverse if those reasons do not support the order." (*Williams v. Superior Court, supra*, 221 Cal.App.4th at p. 1361.)

## II. *Analysis*

### A. *Change of Circumstances*

Plaintiffs' central argument in their appellate briefs is that the court erred in concluding that the *CashCall II* decision constituted changed circumstances justifying the court's consideration of CashCall's decertification motion.

The argument is without merit. In initially seeking class certification and challenging the court's summary adjudication order, plaintiffs argued that section 632's "confidential communication" requirement was an objective test that did not require any individualized analysis and/or required a simple statement from each plaintiff that "they each thought the calls were not being monitored." In *CashCall II*, we agreed that the test was objective, but stated the test encompassed an evaluation of the totality of the

17

circumstances regarding the reasonableness of the plaintiff's belief. (*CashCall II, supra*, 200 Cal.App.4th at p. 1396; see *Flanagan, supra*, 27 Cal.4th at pp. 776-777; see also *Sanders v. American Broadcasting Companies, supra*, 20 Cal.4th at pp. 914-927; *Shulman v. Group W Productions, Inc.* (1998) 18 Cal.4th 200, 234, 235.) Whether this statement constituted "new" law or a clarification of existing law as applied to the facts of this case, it constituted a reasonable and sufficient ground for the trial court to conclude that reevaluation of class certification was necessary.

Plaintiffs argue that as a matter of law the court could not consider the decertification motion because of the problem of " 'one-way intervention.' " This issue arises when a trial court rules on the substantive merits before reaching a final conclusion on class certification. (*Fireside Bank v. Superior Court* (2007) 40 Cal.4th 1069, 1078-1084 (*Fireside Bank*).) In a merits-first procedure, a defendant may be prejudiced because "not-yet-bound absent plaintiffs may elect to stay in a class after favorable merits rulings but opt out after unfavorable ones." (*Id.* at p. 1074.) Plaintiffs may also be prejudiced: "[A] defendant should not be allowed to sandbag a plaintiff, withholding its best case against certification and then seeking decertification if it suffered an unfavorable merits ruling." (*Id.* at p. 1081.) A rule requiring a court to decide on class certification before the merits promotes fairness by "ensuring that parties bear equally the benefits and burdens of favorable and unfavorable merits rulings." (*Id.* at p. 1074.)

However, as plaintiffs acknowledge, the certification-before-merits rule is not an " 'iron-clad standard.' " (*Fireside Bank, supra*, 40 Cal.4th at p. 1081.) " 'It would be both unduly rigid and unjust to force the maintenance of [a class] action [after a ruling on the

18

merits] even when there is a proper reason for decertification . . . .' " (*Ibid.*; *Green, supra*, 29 Cal.3d at p. 148.) Decertification generally requires changed circumstances, but courts retain inherent authority (and in fact have the affirmative duty) to decertify a class if a merits ruling makes clear that individual issues will engulf the litigation such that the class litigation becomes unmanageable and/or will substantially interfere with one or both of the parties' due process rights. (See *Duran, supra*, 59 Cal.4th at pp. 29-30 ["Trial courts . . . have the obligation to decertify a class action if individual issues prove unmanageable" or "threaten to overwhelm the litigation"]; *Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 335; accord *Hall v. Rite Aid Corp.* (2014) 226 Cal.App.4th 278, 291, fn. 6 ["[A]n order granting class certification is 'subject to modification at any time.' . . . '[I]f unanticipated or unmanageable individual issues do arise, the trial court retains the option for decertification' "]; *MacManus v. A.E. Realty Partners* (1987) 195 Cal.App.3d 1106, 1117 [a class "can be decertified at any time, even during trial, should it later appear individual issues dominate the case"]; see also *Walsh v. IKON Office Solutions, Inc.* (2007) 148 Cal.App.4th 1440, 1445-1448; *Keller v. Tuesday Morning, Inc.* (2009) 179 Cal.App.4th 1389, 1399.) A court has a continuing duty to ensure that class action is a fair and an appropriate procedural vehicle for resolving the plaintiffs' claims.

Under these principles, the court's decertification order was not precluded by the certification-before-merits rule. There is no evidence in the record of any gamesmanship or other type of tactical maneuvering or abusive conduct that would trigger one-way-intervention concerns. CashCall vigorously opposed class certification when plaintiffs

19

initially moved to certify the class, and sought decertification only after *CashCall II* clarified the individual factual issues that would arise at trial. Although it is true that CashCall would not have sought to decertify the class if it had prevailed on appeal, that is merely because there would be nothing more to litigate on the section 632 claim. The class case would have been over if we had upheld the summary adjudication order. Moreover, CashCall did bear the burden of the unfavorable ruling. As CashCall acknowledges in its appellate brief, it remains "bound by the published appellate decision that rejected one of [its key] affirmative defenses." Thus, even after decertification, in plaintiffs' individual actions CashCall could not prevail on the "corporation is one party" defense rejected in *CashCall II*.

Further, we reject plaintiffs' argument that a defendant must show a " 'compelling justification' " for decertification *in addition to* changed circumstances. In support of this standard, plaintiffs cite to *Fireside Bank*. However, the *Fireside Bank*'s reference to the "compelling justifications" standard pertains to the unusual (and disfavored) circumstances under which the court may rule on the merits *before* ruling on an *initial* class certification motion. (*Fireside Bank, supra*, 40 Cal.4th at p. 1084.) In this case, the court did not rule on the summary adjudication motion until after it certified the class, and thus this standard is inapplicable. In any event, as discussed below, there were compelling justifications for the court to decertify the class because each plaintiff's liability claim would need to be individually litigated, and any remaining common issues were negligible compared to these critical individual issues.

20

B.  *Individual Issues Predominate*

Plaintiffs alternatively contend the court erred in concluding the existence of individual issues regarding the existence of " 'confidential communication[s]' " precluded the case from going forward as a class action.

A California Court of Appeal recently addressed this precise issue in the context of an initial section 632 class certification.  (*Hataishi v. First American Home Buyers Protection Corp.* (2014) 223 Cal.App.4th 1454 (*Hataishi*).)  The *Hataishi* court held the trial court properly refused to certify a class of "outbound" callers who alleged a violation of section 632.  We agree with *Hataishi*'s analysis and find it applicable to this case.

In *Hataishi*, a customer alleged her home warranty company (Home Buyers) violated section 632 by recording the customer's phone conversations without the customer's consent.  (*Hataishi, supra*, 223 Cal.App.4th at pp. 1457-1459.)  The plaintiff sought to certify a class only of outbound callers (those who received the phone call that was monitored).  (*Id.* at p. 1459.)  The evidence presented on the certification motion showed that most inbound callers received an automated disclosure regarding call monitoring, but customers who received outbound calls from company employees were not given the message.  (*Id.* at p. 1457-1460.)  In opposing class certification, Home Buyers contended that "each putative class member's unique experiences—including the length of the class member's relationship with [Home Buyers' agent], the number of times the class member heard [the] automated disclosure regarding the recording of inbound calls, and the class member's experience with other businesses that monitor calls for quality assurance—would be relevant to assessing whether a particular class member

21

reasonably believed an outbound call . . . would not be recorded." (*Id.* at p. 1460.)

Applying the objective reasonableness test established by our high court in *Flanagan* and articulated by this court in *CashCall II*, the *Hataishi* court agreed. (*Hataishi, supra*, 223 Cal.App.4th at pp. 1463-1468; see *Flanagan, supra*, 27 Cal.4th at pp. 772-776; *CashCall II, supra*, 200 Cal.App.4th at pp. 1396-1398.) The *Hataishi* court stated: "[T]he determination whether an individual plaintiff had an objectively reasonable belief that his or her conversation with [the defendant] would not be recorded will require individualized proof of, among other things, 'the length of the customer-business relationship [and] the [plaintiff's] prior experiences with business communications. . . .' " (*Hataishi*, at p. 1467, quoting *CashCall II, supra*, 200 Cal.App.4th at p. 1396.) The court noted the named plaintiff had admitted hearing the call disclosure message "approximately a dozen" times in other phone calls and had substantial prior business telephone-monitoring experience, and that under these particular circumstances this plaintiff's "objectively reasonable expectation" regarding the confidentiality of the phone conversation could be very different "from other customers who never heard the disclosure or heard it only a few times." (*Id.* at p. 1468.) The court stated the plaintiff's "prior experience[s] . . . could support a jury finding that she lacked an objectively reasonable expectation that her calls . . . would not be recorded. A jury could rationally reach a different conclusion concerning another plaintiff who has not had the same experience." (*Ibid.*) The court concluded that "due process requires that [the defendant] be permitted to cross-examine an individual plaintiff regarding those experiences that may impact the reasonableness of his or her alleged confidentiality

22

expectation." (*Ibid.*) Based on this analysis, the reviewing court found the trial court properly denied class certification on the section 632 claim. (*Ibid.*)

We agree with *Hataishi*'s reasoning as applied to this case. In *Hataishi*, as here, the plaintiffs had a continuing ongoing business relationship with the defendant, during which many plaintiffs may have heard a monitoring disclosure statement at least once. As we determined in *CashCall II*, there are numerous facts unique to each individual plaintiff that are critical to resolving the liability issues under these circumstances. Although each plaintiff declared that he or she did not believe anyone was listening to their monitored calls with CashCall employees, the trier of fact would have to determine whether a person *under the particular circumstances and given the background and experience of each plaintiff* would have understood that the particular call was not being monitored. For example, plaintiff Castell testified that he never heard the Call Monitoring Disclosure; he had no prior business experience with call monitoring; and he had three telephone calls with CashCall employees before his monitored call. In contrast, plaintiff Knecht had 17 calls with CashCall within three months of his monitored call; had experience with business communications; and was equivocal about whether he had heard the Call Monitoring Disclosure. A jury could logically distinguish between these plaintiffs on the issue whether each had a reasonable expectation the conversation would not be overheard.

Although plaintiffs' counsel suggested below that the confidential-communication issue could be resolved by a class questionnaire or survey, "any procedure to determine the defendant's liability to the class must still permit the defendant to introduce its own

23

evidence, both to challenge the plaintiffs' showing and to reduce overall damages."

(*Duran, supra*, 59 Cal.4th at p. 38.) CashCall persuasively argued that each plaintiff's factual circumstances must be considered, and cross-examination must be permitted, to determine whether each monitored telephone call was a confidential communication subject to section 632's statutory prohibition. The existence of individual issues does not preclude a class action, but the California Supreme Court has repeatedly "cautioned that class treatment is not appropriate 'if every member of the alleged class would be required to litigate numerous and substantial questions determining his individual right to recover following the "class judgment" ' on common issues." (*Duran, supra*, 59 Cal.4th at p. 28.)

Plaintiffs contend that decertifying the class because of the existence of individual issues on the "confidential communication" issue is inconsistent with the strong public policy underlying section 632 that seeks to protect individual privacy rights. Plaintiffs maintain that without a class action, it will not be economically feasible for plaintiffs to enforce their right to telephone privacy under section 632.

We agree that courts are required to liberally construe section 632 to effectuate the important public policy ensuring telephonic privacy. (*Kearney, supra*, 39 Cal.4th at p. 125; see *Flanagan, supra*, 27 Cal.4th at p. 775; *CashCall II, supra*, 200 Cal.App.4th at pp. 1392-1393.) But we cannot employ class action rules to achieve a public policy objective if the class procedures would eliminate a plaintiff's burden of proving a statutory element and/or interfere with the defendant's right to challenge the plaintiff's evidence. (See *Duran, supra*, 59 Cal.4th at pp. 34-35.) Section 632 specifically imposes liability only if the communication was "confidential," defined to "exclude[ ] . . .

24

circumstance[s] in which the parties to the communication may reasonably expect that the communication may be overheard or recorded." (§ 632, subd. (c).) This statutory requirement differs from other Privacy Act statutes that prohibit the improper recording of communications regardless whether they are "confidential." (See § 632.7.) Given that the Legislature deliberately chose to apply section 632's prohibition only to a "confidential communication" and defined this phrase to require an analysis of the totality of the factual circumstances, we cannot by the procedural device of a class action read out this required statutory element.

" 'Class actions are provided only as a means to enforce substantive law. Altering the substantive law to accommodate procedure would be to confuse the means with the ends—to sacrifice the goal for the going.' [Citation.]" (*Duran, supra*, 59 Cal.4th at p. 34.) To the extent plaintiffs believe the "confidential communication" statutory element makes the enforcement of the statute too cumbersome or too expensive for an individual to recover on the claim, their remedy lies with the Legislature and not with the courts. (§ 632, subd. (a).) Class action rules and due process principles do not permit certification of class action unless it permits the defendant to fairly litigate individual liability questions. Where, as here, the court found those individual questions will overwhelm the litigation, the court acted within its discretion in decertifying the class.

Plaintiffs' reliance on *Medrazo v. Honda of North Hollywood* (2008) 166 Cal.App.4th 89 is misplaced. In that case, the plaintiff moved to certify a class of individuals who allegedly purchased a motorcycle without a manufacturer's "hanger tag." (*Id.* at pp. 92-94.) The court identified numerous significant disputed legal questions that

25

were common among class members, including whether the defendant violated the applicable statutes by selling motorcycles without hanger tags, the type and nature of damages permitted under the applicable statutes, whether the alleged injury is mitigated by the disclosure of information in a sales agreement, and whether the defendant is excused from compliance with the statutes if a manufacturer does not supply the tag. (*Id.* at p. 100.) Although the court recognized there were also individual questions, the court found "the substance and scope of [these] issues pale in comparison to the substance and scope of the common issues." (*Ibid*.) The court also noted these individual issues could be "effectively managed" by permitting class members to attest to the straightforward information, including the existence of a hanger tag on the purchased motorcycle. (*Ibid.*)

This case is different. Under section 632, the defendant has the right to litigate the issue of each class member's consent and each class member's claimed objectively reasonable expectation that the call was not being monitored. Although there remain certain common questions—including whether CashCall monitored the calls and the timing of the Call Monitoring Disclosures—the court acted within its discretion in finding these questions pale in terms of factual complexity and scope when compared with the significant individual questions regarding liability.

*Lewis v. Robinson Ford Sales Inc*. (2007) 156 Cal.App.4th 359, relied upon by plaintiffs, is also distinguishable. In *Lewis*, the plaintiff alleged an automobile seller misrepresented the vehicle's actual purchase/financed price in sales contracts by improperly calculating the value of a trade-in that was part of the transaction. (*Id.* at pp. 363-366.) This court reversed the trial court's denial of the plaintiff's class certification

26

motion. (*Id.* at pp. 367-371.) On the predominance issue, we noted the plaintiff's theory of recovery is "analogous to a strict liability provision, and individualized proof of reliance or financial harm to the customer is therefore not required for liability." (*Id.* at p. 370.) We further noted "the existence of any statutory violations may be determined by examining the face of the records provided by defendant . . . ." (*Ibid.*)

In this case, unlike *Lewis*, liability cannot be determined based solely on documentary evidence, and although there are no reliance issues, there remain significant individual issues regarding each plaintiff's reasonable expectations that the conversation would not be overheard or recorded.

We also find unpersuasive plaintiffs' argument that the court erred in decertifying the outbound call class. Our analysis applies to both inbound and outbound calls. Although the outbound calls did not include a disclosure message, as in *Hataishi* individual issues remain for outbound-call class members regarding the reasonableness of the claimed expectation of privacy under the circumstances. (*Hataishi, supra*, 223 Cal.App.4th at pp. 1465-1468.) The court did not abuse its discretion in refusing to distinguish between the two classes on the predominance issue.

Finally, to the extent plaintiffs challenge *CashCall II*'s conclusions on the reasonable expectations issue, our holdings and analysis are binding on plaintiffs under the law of the case doctrine. (See *Kowis v. Howard* (1992) 3 Cal.4th 888, 892-893.) In *CashCall II*, we rejected plaintiffs' arguments (made in their appellate reply brief) that the objective test does not require an examination of the surrounding facts. (*CashCall II, supra*, 200 Cal.App.4th at pp. 1396-1398.) We decline to reexamine this conclusion.

27

Additionally, plaintiffs' argument that *CashCall II* converted the statutory objective test into a subjective test is not supported. Under well-settled law, in applying the objective test, a court may examine the surrounding circumstances which, in this case may include the party's own conduct and background to ascertain whether the person had a reasonable expectation that the communication would not be overheard or recorded. (See *Sanders, supra*, 20 Cal.4th at pp. 914-915, 923, 924-926; *Shulman v. Group W Productions, Inc., supra*, 18 Cal.4th at pp. 234-235; see also *Hernandez v. City of Pomona* (2009) 46 Cal.4th 501, 513-514.)

## DISPOSITION

Order affirmed. Appellants to bear respondent's costs on appeal.

HALLER, J.

WE CONCUR:

BENKE, Acting P. J.

HUFFMAN , J.

28

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| AMANDA KIGHT et al., | D063363 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. GIC866032) |
| CASHCALL, INC., | |
| Defendants and Respondents. | |

THE COURT:

The opinion filed October 9, 2014, is ordered certified for publication.

BENKE, Acting P. J.

Copies to: All parties